UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 26-CR-094

SAMUEL STAIR,

Defendant.

**DEFENDANT SAMUEL STAIR'S REPLY IN SUPPORT OF MOTION FOR REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER**

COMES NOW Samuel Stair, by and through counsel Daniel M. Adams, who offers this reply to the Government's opposition (ECF #149) to his motion for revocation of the Magistrate Judge's Detention order (ECF #77) entered on April 27, 2026.

### I. Introduction

The government's opposition to Mr. Stair's motion for release does exactly what the Bail Reform Act forbids: it substitutes accusations of serious charged conduct for individualized risk assessment and substitutes these accusations for a required showing — by clear and convincing evidence — that no combination of conditions will reasonably assure community safety.

The government marshals the full weight of its investigative narrative (including its often-contradictory allegations and theories of liability) and presses their accusations into service as a stand-alone argument for detention. But the law requires more. The question before this Court is not whether the government has alleged a serious federal criminal case. It is whether, under a *de novo* review of the § 3142(g) factors, the government has met its burden to demonstrate that Mr. Stair himself — subject to individualized conditions of release — cannot be managed in the community. The government hardly tries to meet this burden – because it cannot.

The Bail Reform Act demands an individualized, forward-looking assessment of risk and a government showing—by clear and convincing evidence—that no combination of conditions can

1

reasonably assure community safety. The government's opposition leans on the gravity of the allegations and rhetorical flourish rather than proof tailored to this defendant and the proposed conditions.

Three defects in the government's position independently warrant release: (a) failure to engage the proposed conditions with any particularity; (b) reliance on a "nature of offense" narrative as a proxy for dangerousness; and (c) speculation about post-arrest conduct rather than evidence of obstruction or risk unmanageable by conditions. The record on history and characteristics and Pretrial Services' assessment further supports release.

## II.     The Government Never Addresses Why Proposed Conditions Are Inadequate

The government devotes pages to the charged conduct but offers only a conclusory assertion that "no set of conditions" could suffice, without reasoned engagement with the defense proposal. The Act requires proof, not ipse dixit. The defense proposes a robust package—home detention with GPS, travel restriction to the Eastern District of Wisconsin, no contact with co-defendants or drug-associated premises, device monitoring, surrender of passport, firearm prohibition, and intensive Pretrial Services supervision—tailored to eliminate the alleged vectors of risk.

The government identifies no concrete way in which these conditions would fail to mitigate any cognizable danger, and it provides no evidence that Mr. Stair cannot or will not comply. "To find danger to the community under [the clear and convincing] standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2nd Cir. 1985). "Evidence that defendant committed the ... offense with which he is charged, even if very compelling, cannot by itself satisfy the requirement of § 3142(f) that a determination 'that no condition or combination of conditions will reasonably assure the safety of any other person and the community' be supported by clear and convincing evidence." *United States v. Moore*, 607 F.Supp. 489, 498 (N.D. Ca. 1985).

As the Arizona district court found in a murder case where it upheld pretrial release:

"The charge against him is extremely serious. Indeed, it is difficult to think of one more serious. But the charge, at this stage, is simply an accusation. Defendant Eischeid is presumed

2

innocent. See 18 U.S.C. § 3142(j). In light of the defense proffer that he has lived a responsible and crime-free life, the Court cannot conclude that the Government has met its burden merely by the charge contained in the Indictment. *United States v. Eischeid*, 315 F.Supp. 1033, 1036 (D. Ar. 2003).

### III. The Government's "Nature of the Offense" Argument Does Not Answer the Issue of Detention.

The government's principal argument is that the allegations are serious. That answers only whether the offense is grave, not whether this defendant—under stringent supervision—poses an unmanageable prospective risk. The magistrate judge found the statutory presumption rebutted, and the government cannot reintroduce an irrebuttable presumption by relabeling severity as dangerousness.

The government's primary (and only) argument is that the nature and circumstances of the allegations — that Mr. Stair leased a small number of residential units (approximately 1,500) under his control to drug traffickers — weighs so heavily in favor of detention that it effectively resolves the analysis. (ECF #149 at 5-18). But the government's argument solves for just one factor this Court may consider. If the sheer severity of drug trafficking allegations were sufficient to sustain detention, the rebuttable presumption of § 3142(e)(3) would be irrebuttable. The magistrate judge expressly found that Mr. Stair overcame the presumption. (ECF #77 at 2-3). Having conceded that, the government cannot simply re-import the weight of the allegations through the "nature of the offense" factor to accomplish indirectly what the presumption analysis foreclosed directly.

The § 3142(g)(1) factor asks about the nature of the offense as it bears on prospective risk — not as a categorical proxy for guilt. A court analyzing that factor must ask: what about this offense, and this defendant, suggests that release on conditions cannot reasonably assure community safety? The government's narrative answers the first question (this was a serious offense) but never answers the second (why conditions cannot work for this defendant).

Moreover, the government's narrative does not show that Mr. Stair used violence, possessed weapons, handled drugs, financed trafficking, or encouraged drug activity. To the contrary, the record includes multiple indicators that others kept him in the dark and that he discouraged drug activity:

Despite the often emotive and breathless conclusions of the government's rhetoric (i.e. "Defendant has victimized and terrorized" the community (ECF #149 at 5), let's be clear as to the substance of the government's case: at best Mr. Stair acquiesced to a small fraction of the residential units he had under his control to be leased by those involved in drugs.

But there's <u>no allegation</u> Mr. Stair ever actually used violence in furtherance of aiding drug trafficking (or otherwise used violence – talk, especially loose talk, is cheap), carried a weapon, held drugs for others, financed drug dealing, delivered drugs, or otherwise encouraged drug behavior. In the context of managing low-income housing with high-risk or unstable tenants, property managers often adopt informal, non-confrontational communication styles as a practical means of de-escalation and self-protection. Humor, nervous laughter, or minimizing rhetoric in conversations should not automatically be interpreted as endorsement of unlawful activity. In many cases, such responses reflect an effort to avoid escalating tensions, provoking retaliation, or jeopardizing personal safety while continuing to manage difficult tenant relationships. Individuals who routinely deal with volatile tenants, suspected gang members, drug users, or persons engaged in criminal activity may respond with outward familiarity, joking, or apparent minimization in order to preserve access, maintain order, and reduce the risk of confrontation or retribution. Those conversational dynamics must be understood in context before drawing conclusions about intent or agreement.

The government selectively interprets tone, laughter, and conversational shorthand as evidence of complicity. But absent context—and particularly absent full discovery—those interactions are equally consistent with conflict avoidance, property-management pragmatism, and efforts at personal safety in a difficult operating environment.

Critically, the government's complaint and opposition brief are chockfull of indicators that Mr. Stair had no knowledge and/or expressly discouraged drug activity in his units, to wit:

A. Co-defendant Lopez and CS2 left Mr. Stair's presence to discuss a drug trafficking. (Gov't Complaint ECF #103 at ¶79). This shows Lopez was keeping Mr. Stair in the dark as to her scheme with CS2.

B. Co-defendant Lopez is heard lying to Mr. Stair in real time when finalizing CS2's drug house transaction. (ECF #103 at ¶89). Again, this shows Lopez was keeping Mr. Stair in the dark as to her scheme with CS2.

C. Further, that Co-defendant Lopez and CS2 discuss working around Mr. Stair's insistence that rental units be rented by actual people and Mr. Stair specifically asking who would be moving into a rental unit sought by CS2 (ECF #103 at ¶¶92-93, 96, 99).

D. Co-defendant Lopez told CS2 that "STAIR was not aware of the additional 15% payment she was receiving (for drug proceeds)." (ECF #103 at ¶106. *See also* ¶109). (Emphasis added). The implication here is clear that Lopez was running her own scheme, unbeknownst to Mr. Stair.

E. That Mr. Stair directed the government's undercover officer "Rickey" who was posing as someone seeking a rental unit that "Now this house will just be for folks crashing make sure no activity happens at this house or nearby we don't need drama." This is a direct statement that Mr. Stair did not want drug activity in his rental unit. (ECF #103 at ¶128). (Emphasis added).

F. Further, that co-defendant Lopez was upset that CS2 introduced UC Rickey to Mr. Stair as it would complicate her ability to rent to him given her knowledge of his drug activity. (ECF #103 at ¶132). This corroborates Mr. Stair's directive that no drug activity should occur in the rental unit sought by UC Rickey.

G. That Mr. Stair did not know who co-defendant Sinclair was after being sent a photograph from the investigating police detective, as overheard on a secretly recorded line. (ECF #103 at ¶144). Further Mr. Stair is overheard guessing the police are investigating drug activity – a far cry from actual knowledge of drug activity in the Blaq Bar. (ECF #103 at ¶137).

H. Mr. Stair was honest and admitted to police that he had talked to the owner of the Blaq Bar where co-defendant Sinclair was selling drugs after learning about the police's investigation. (ECF #103 at ¶139).

These facts, taken as described, cut against a finding that only detention can assure safety and instead support release with targeted restrictions.

5

## IV. The Weight-of-the-Evidence Factor Was Misapplied Below

The government contends that Judge Joseph "applied (the weight factor) in exactly the way Defendant suggests — she noted that it favored detention and moved on." (ECF #149 at 19). That description only underscores the problem. The written detention order cited weight of the evidence and potential sentence as the bases for detention. If the weight factor is so universally strong in federal cases that it warrants only passing mention and a finding of "detention," it provides no individualized basis for confining this defendant before trial. Applied that way, it becomes a *de facto* presumption of detention layered on top of the statutory presumption that was already overcome.

The Seventh Circuit was direct: evidence of guilt is "only one of the factors relevant to detention" and is admitted "only to support or challenge the weight of the government's case against the defendant." *United States v. Dominguez,* 783 F.2d 702, 706 (7th Cir. 1986). The weight of the evidence may be considered only insofar as it informs the risk assessment — i.e., whether it suggests the defendant will flee or present a danger that conditions cannot address. The government has not connected the strength of its case to either of those risk questions in a meaningful way.

This Court should be particularly concerned about the government's reliance on this factor before providing any discovery to Mr. Stair. This factor should not become a premature adjudication of guilt. Without discovery, the defense cannot meaningfully challenge:

- witness credibility;

- omissions;

- impeachment material;

- context of recordings;

- chain of custody;

- exculpatory information;

- or inconsistencies in reports.

Assigning substantial weight to a one-sided proffer risks converting detention into punishment based on untested allegations. Although detention hearings are not discovery devices, due process still

requires a fundamentally fair proceeding. Where the government relies on evidence exclusively within its possession while withholding discovery, the defense is deprived of any realistic opportunity to rebut the narrative. Courts therefore retain discretion to discount unsupported proffers or require more reliable evidentiary showings. The government should not obtain pretrial detention through evidentiary asymmetry—relying on undisclosed materials while simultaneously arguing the defense has failed to rebut allegations it has not been permitted to examine.

### V. The Post-Arrest Conduct Allegations Are Speculative and Insufficient

The government's most inflammatory new material concerns Mr. Stair's alleged post-arrest conduct: sharing witness information, using co-defendants' PINs, providing money to co-defendants, and discussing the placement of property funds into separate accounts. (ECF #149 at 1, 26). Each of these allegations is underdeveloped, conclusory, and should be discounted.

### A. The PIN Allegation Is Under Investigation, Not Established

The government itself concedes that "law enforcement has reason to believe Defendant has also used the PIN number of others housed with him and are currently reviewing those calls." (ECF #149 at 26). An allegation under active investigation is not evidence, let alone clear and convincing evidence of unmitigable danger. The government cannot meet its statutory burden by pointing to something it has not yet established. Moreover, even if established – this would constitute a potential rules violation of detention facility he was being housed in – not a federal crime or evidence of obstruction.

An unverified, ongoing inquiry is not proof of obstruction or danger. Even if substantiated, such conduct would reflect a facility rules issue remediable by court directives, not proof that no conditions can work. If the government has transcripts or recordings, it should produce them.

### B. The Financial Discussions Do Not Establish Obstruction

The government characterizes Mr. Stair's discussion of placing property funds into a separate account as an attempt to evade forfeiture. (ECF #149 at 26). Noticeably absent from the government's discussion is any acknowledgment that undersigned counsel and government's counsel have engaged in frequent conversation about the S2's properties – and that undersigned counsel advised Mr. Stair's

7

third party management company to segregate income from those properties noted in the government's complaint as drug premises as tainted – against those that were not noted in the complaint. The government has been fully informed of this protocol being put in place. Mr. Stair is still the lawful and rightful owner of his property. As someone who singlehandedly built a large residential property portfolio, his concern over his assets is understandable – and his knowledge as to the properties and their management is irreplaceable in the near term. Clearly, post-indictment, no real property assets are being transferred or hidden. Discussions between a defendant and his wife or realtor about business finances, without more, do not establish obstruction of justice.

### C. Aiding a Co-Defendant Is Not Per Se Obstruction

The government notes that Mr. Stair requested that money be placed on the books of co-defendant Jermaine Erving and an unrelated defendant. (ECF #149 at 26). The provision of money to an incarcerated person is not, on its face, obstruction of justice. The government does not allege — nor does the record reflect — that Mr. Stair directed Erving or any co-defendant to lie, withhold testimony, or take any particular action. The bare act of financial support, without an accompanying corrupt purpose, does not meet the government's burden. Commissary deposits, absent any direction to influence testimony or impede proceedings, are not obstruction. If the government claims corrupt intent, it should identify the specific communications and requested acts

Further, any reasonable person would recognize the most likely conclusion that Mr. Stair, a man in his 50s of diminutive physical stature, with no experience in a custodial situation, would likely be aiding those around him for his own personal safety.

### D. Government's Selected Quote of Mr. Stair Discussing Housing Is Ambiguous

The government quotes Mr. Stair as stating: "maybe this is their time if they really help me out, I'll help some of these people get houses." (ECF #149 at 26). The government characterizes this as obstruction. An equally plausible reading of this statement — made in the context of Mr. Stair's business as a housing provider of last resort — is that Mr. Stair is discussing legitimate housing assistance for people who have supported him. The Bail Reform Act does not permit detention based on the most cynical and inculpatory possible interpretation of ambiguous statements.

Ambiguous, business-related statements—particularly by a landlord known to rent to individuals with limited options—cannot be read in the light least favorable to release without corroborating evidence of a corrupt quid pro quo. Narrow no-contact and no-assistance conditions eliminate any residual concern.

**VI. The Government's "History and Characteristics" Analysis Is Circular and Conclusory**

In an argument reminiscent of Lewis Carroll's Queen of Hearts, the government argues that Mr. Stair's positive community characteristics — his stable employment, lack of criminal history, and community ties — weigh in favor of detention because those same characteristics allegedly enabled him to commit the charged offenses. (ECF #149 at 19-20). This argument is circular and, if accepted, would transform every § 3142(g)(3) factor that is favorable to a defendant into an argument for detention in every case. Congress identified history and characteristics — including community ties, employment, and lack of criminal history — as factors courts must weigh in favor of release. The government cannot simply and cynically invert those factors by asserting that they made the defendant a more effective alleged criminal.

Mr. Stair has lifelong Wisconsin roots, resides in the Eastern District, has no prior criminal history other than a youthful drug-possession matter, has no history of failures to appear, maintains strong family ties, and received a recommendation for release from Pretrial Services. (ECF #70). The role of Pretrial Services is to collect, verify, and report to the judicial officer, prior to the pretrial release hearing, information pertaining to the pretrial release of each individual charged with an offense, including information relating to any danger that the release of such person may pose to any other person or the community, and, where appropriate, include a recommendation as to whether such individual should be released or detained and, if release is recommended, recommend appropriate conditions of release.

The government neither disputes the recommendation nor explains why this expert assessment should be disregarded. If the government has contrary risk indicators, it has not identified them. The Court can further fortify compliance through third-party custodianship and frequent home visits by Pretrial Services

**VII. The Proposed Conditions Directly Address Any Identified Risk**

The government's ultimate argument is that no conditions can work because Mr. Stair's alleged criminal enterprise was itself disguised as a legitimate business. (ECF #149 at 27). The government's conclusion is ridiculous, but also assumes its own conclusion. Mr. Stair is not being released into the same operational environment that allegedly enabled the charged conduct. The conditions he proposes would:

- Remove him physically from his properties through home detention enforced by GPS monitoring;

- Prohibit all contact with co-defendants, alleged drug-associated properties, and known tenants of those properties;

- Restrict all travel to the Eastern District of Wisconsin with surrender of his passport (which undersigned counsel already possesses);

- Subject his devices and communications to monitoring and search by Pretrial Services;

- Prohibit any possession of firearms; and

- Require regular reporting and unannounced visits by Pretrial Services.

These measures foreclose the very avenues the government claims enabled the charged conduct—personal site access, communications with alleged co-conspirators, and unsupervised device use. If the government believes any additional, tailored restriction is necessary, it has not identified one. Under these conditions, the day-to-day situation the government claims Mr. Stair used — personal visits to properties, management of co-conspirator relationships, provision of advance warning about law enforcement — cannot function. The government has not argued otherwise with any specificity. Its failure to engage with the proposed conditions, individually or collectively, is itself a failure of proof.

**VIII. Conclusion**

The government's response is a recitation of the allegations against Mr. Stair. It is not a sufficient showing, by clear and convincing evidence, that no combination of conditions can

reasonably assure community safety. The presumption was overcome below. The weight of the evidence is the least important factor. The prospect of a lengthy sentence is not an independent ground for detention. The proposed post-arrest obstruction conduct is speculative and unestablished at best. The history and characteristics of the defendant clearly favor release. And the government has not addressed — let alone refuted — the sufficiency of the conditions proposed.

For all the foregoing reasons, this Court should revoke the magistrate judge's detention order and impose the conditions set forth in Mr. Stair's motion for release.

DATED this 18th day of May, 2026

Respectfully submitted,

/s/ Daniel M. Adams
Daniel M. Adams, Wis. Bar. No. 1067564
Adams Law Group LLC
1200 East Capitol Drive, Suite 360
Milwaukee, Wisconsin 53211

Lauren D. Gorman, Nev. Bar No. 11580
Gorman Law PLLC
275 Hill Street, Suite 248
Reno, NV 89501

Attorneys for Defendant Samuel Stair

11