UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL P. STAIR,

Defendant.

Case No. 26-CR-94
FILED EX PARTE/UNDER SEAL

UNITED STATES' EX PARTE APPLICATION FOR POST-INDICTMENT RESTRAINING
ORDER TO PRESERVE FORFEITABLE ASSETS

The United States of America, by and through its attorneys, Katherine M. Halopka-Ivery and
Julie F. Stewart, Assistant United States Attorneys, files this application under 18 U.S.C.
§ 983(e)(1)(A) for the entry of a post-indictment criminal forfeiture restraining order. The
United States seeks an order: (a) requiring Defendant to continue to contract with a third-party
management company to operate his business throughout the pendency of this litigation; and (b)
requiring net proceeds of Defendant's forfeitable business operations to be deposited to the
Treasury's temporary holding account, known as the Treasury Suspense Account ("TSA").

In support of this motion, the United States states as follows:

## I.        INTRODUCTION AND FACTUAL BACKGROUND

On May 5, 2026, Defendant Stair was indicted by a Grand Jury on eleven counts related
to his operation of a real property management company. The business (colloquially known as
S2 Real Estate) operates through forty-three related LLCs, each of which exist primarily to hold
real property in the state of Wisconsin. (ECF 102). Defendant was charged under 21 U.S.C. §§
846, 856, and 841 as well as 18 U.S.C. § 1956. The drug-related charges against him include
conspiracy to engage in drug trafficking, which charges carry a mandatory minimum of ten
years' imprisonment (Counts Two & Twenty-Three), and maintaining a drug-involved premises

and a conspiracy to do the same (Counts One, Five, Ten, Twenty-one, and Twenty-eight). Defendant was also charged with concealment money laundering, in violation of 18 U.S.C. §1956(a), and two substantive counts of money laundering (Counts Thirty-three – Thirty-five).

The charges in the Indictment relate to how Defendant operated his S2 Real Estate business by renting houses to tenants he knew to be drug traffickers for the purpose of facilitating drug trafficking. In issuing the Indictment, the Grand Jury found probable cause to believe that:

- Defendant operated S2 Real Estate through forty-three limited liability companies. ECF 102, ¶ 1(a);

- Defendant was the registered agent of each LLC and that each LLC existed primarily to hold real property, *id.* at ¶1(b), ¶1(c);

- Defendant's primary business purpose was to hold and rent real property as a landlord and property manager, *id.* at ¶1(f); and

- Defendant utilized his real estate business to facilitate the drug trafficking and to engage in the money laundering offenses charged in the indictment. *Id.* at ¶1(o).

With respect to the money laundering charges in the Indictment, the Grand Jury found probable cause to believe that:

- Defendant used Bank Accounts at Banks 1 and 2, *id.* at ¶¶ 1(g)(i); 1(g)(ii); 1(h)(i); 1(h)(ii);

- Defendant maintained books and records for his business in a program called AppFolio, *id.* at ¶1(i); and

- Defendant deposited proceeds from the controlled substances offenses, as charged in the Indictment, at the Accounts at Bank 1 and Bank 2 and commingled those

2

proceeds with legitimate business proceeds for the purpose of concealing the nature of his drug-trafficking activities, *id.* at ¶1(j-o).

The Affidavit in support of the Criminal Complaint similarly established probable cause to establish that Defendant was commingling the proceeds of his unlawful drug-trafficking activities with his legitimate business income to facilitate drug trafficking and money laundering offenses. (Exh. A, at ¶¶ 361-383).

The Indictment includes a forfeiture notice that lists Defendant's forty-three LLCs and the assets held through those the LLCs. ECF 102, pp. 45-48. Many of those LLCs hold multiple properties. Exh. A. In addition to a forfeiture notice, the indictment included specific probable cause findings related to forfeiture. *Id.* at pp. 40-44. In that context, the Grand Jury concluded that there was probable cause to believe that the specific LLCs named in the Indictment were used to facilitate Defendant's drug trafficking and money laundering offenses. *Id.* The affidavit in support of the criminal complaint further supports those probable cause findings.

Based on the Grand Jury's findings, and the probable cause affidavit, the assets held by the LLCs are subject to forfeiture upon conviction pursuant to 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1).

After the Indictment, Defendant was initially detained pending trial. As part of Judge Joseph's detention order, Judge Joseph ordered that Defendant not engage in any financial transactions in excess of $10,000 or have a third party do so on his behalf. (ECF 77). As a result of the Indictment, Defendant retained Smart Asset Realty ("Smart Asset") to manage the properties held by the S2 Real Estate LLCs. Defendant subsequently relied upon this arrangement with a third-party management company as a basis to justify his release from custody. (ECF 173). This Court ordered Defendant released on conditions. (ECF 177). The conditions of Defendant's release include a condition that Stair does not engage in any

3

transaction in excess of $10,000 without prior approval of pretrial services and that Smart Asset must provide notice (but not obtain approval) to Pretrial Services of any expenditure in excess of $10,000. *Id.*

Defendant's counsel has informed the undersigned that Smart Asset has been directed to segregate any income derived from the assets of the S2 Real Estate LLCs pending conclusion of the instant litigation. Other than this representation, the United States has no visibility into, nor oversight authority over, where or how Smart Asset is segregating or managing those funds.

Because the United States lacks visibility into, and authority over, Smart Asset's management of the S2 Real Estate business, and because the assets and income derived therefrom are properties subject to forfeiture in the event of a conviction, the United States makes this motion to ensure the preservation of those forfeitable assets pursuant to 21 U.S.C. 853(e)(1)(A).

## II.     LEGAL STANDARD

a. *Property that facilitates a money-laundering, or drug-trafficking, offense is subject to forfeiture*.

Property "involved in" a money laundering offense is subject to criminal forfeiture.  The criminal forfeiture statute provides in part:

> The court, in imposing sentence on a person convicted of an offense in violation of section . . . 1956 [or] 1957 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, *involved in* such offense, or any property traceable to such property.

18 U.S.C. § 982(a)(1) (emphasis added). Property "involved in" a money laundering offense includes not only the actual criminal proceeds laundered but also any property used to facilitate the laundering offense. *United States v. Cessa*, 872 F.3d 267, 273-74 (5th Cir. 2017) ("Property 'involved in' [a money laundering] offense 'includes the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used

4

to facilitate the laundering offense.'" (quoting *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997)); *see also United States v. Baker*, 227 F.3d 955, 967 (7th Cir. 2000) (noting that all real and personal property used to commit the money laundering offense is subject to forfeiture as property involved in the offense).

Thus, through its operative "involved in" language, the money laundering forfeiture statute subjects a wider array of property to forfeiture than does the general criminal proceeds forfeiture statute applicable to many other criminal offenses. *Compare* 18 U.S.C. § 982(a)(1) (money laundering forfeiture statute) *with* 18 U.S.C. § 981(a)(1)(c) (proceeds forfeiture statute) (made applicable to criminal cases under 28 U.S.C. § 2461); *see also United States v. McGauley*, 279 F.3d 62, 76 & n.14 (1st Cir. 2002) (noting that section 982(a)(1) money laundering forfeiture statute subjects broader array of property to forfeiture than does section 981(a)(1)(C) proceeds forfeiture and that the money laundering forfeiture is not limited to the proceeds being laundered); *United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. 2012) ("Money laundering forfeiture pursuant to § 982(a)(1) applies to a larger class of property than proceeds forfeiture under § 981(a)(1)(C) because it applies to more than just the laundered property or proceeds from the laundered property."), *aff'd,* 574 Fed. Appx. 541 (6th Cir. 2014). Facilitating property subject to forfeiture under section 982(a)(1) includes property items, other than the proceeds being laundered, that make the money laundering offense easier to commit or harder to detect. *Cessa*, 872 F.3d at 274 ("'Facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance.'") (quoting *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir 1997)).

To be forfeitable as facilitating property, a property item must have a "substantial connection" to the offense giving rise to forfeiture:

5

[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c). Thus, a property item is not "involved in" a money laundering offense, as facilitating property, if it has only an incidental connection to the laundering offense. *See*, *e.g.*, *United States v. Coffman*, 859 F. Supp. 2d 871, 880-81 (E.D. Ky. 2012) (house, whose address was used merely as address on a corporate filing of the corporation involved in money laundering, was too incidentally related to money laundering offense to satisfy "substantial connection" test).[1]

Property that is used to commit, or facilitate, a drug-trafficking offense in a substantial manner, in violation of Section 841 or 846 of Title 21, is also forfeitable. 21 U.S.C. § 853(a) (providing for forfeiture, "any property constituting or derived from any proceeds obtained

---

[1] The other legal doctrine, in addition to the statutory "substantial connection test" set forth in 18 U.S.C. § 983(c), that can limit the extent to which the government may forfeit facilitating property is the excessive fines clause of the Eighth Amendment. But the excessive fines clause has no application to this request for a restraining order for several reasons. First, the excessive fines clause might not even apply to a corporation in a criminal case. *See Browning–Ferris Industries of Vermont v. Kelco Disposal, Inc.,* 492 U.S. 257, 276 n.22, (1989) (expressly refusing to "decide whether the Eighth Amendment protects corporations as well as individuals"); *United States v. Chaplin's, Inc.*, 646 F.3d 846, 851 n.15 (11th Cir. 2011) (noting that whether Excessive Fines Clause applies to a corporate defendant in a criminal case is open question). Second, in a criminal case, any excessive fines analysis is undertaken *at sentencing*, when the criminal forfeiture is imposed. *E.g., United States v. Malewicka*, 664 F.3d 1099, 1103 (2011) ("It is well recognized that the Eighth Amendment's limitations apply where a judgment of forfeiture has been entered against a criminal defendant in connection with the conviction of a federal offense."). Finally, even if this case did present a valid Eighth Amendment concern once all forfeitures were considered, the remedy for any Eighth Amendment violation would be merely to mitigate the forfeiture to the extent necessary to prevent it from being excessive. *See United States v. Castello*, 611 F.3d 116, 120-21 (2d Cir. 2010) (noting that because criminal forfeitures are mandatory, if the amount of a forfeiture violates the excessive fines clause of the Eighth Amendment, as grossly disproportional to the gravity of a defendant's offense, the remedy is to reduce the forfeiture only by the amount necessary to render the total amount no longer grossly disproportional). Thus, the Eight Amendment excessive fines clause does not apply to the government's instant application for a restraining order.

6

directly or indirectly as the result of such violation," and "any property used or intended to be used in any manner or part to commit, or to facilitate the commission of, such violation."

In this case, the Grand Jury found probable cause to conclude that Defendant used the S2 Real Estate business to facilitate both his drug-trafficking and money laundering offenses. *See infra* pp. 12-15. Indeed, as explained in more detail before, Defendant here did much more than simply use an address on a corporate filing to incorporate a business that engaged in money laundering. Here, Defendant explicitly used the air of legitimacy of his real estate business to provide properties to drug dealers for drug trafficking purposes and helped them evade detection. He then commingled the money he earned from renting those properties for drug-trafficking purposes with his legitimate business proceeds, thereby making it easier for him to evade law enforcement detection. Defendant's use of his "legitimate" business to hide his drug-trafficking and money laundering activity made both of those illegal enterprises easier to commit and harder for law enforcement to detect than either crime would have been without the S2 Real Estate business enterprise.

      b. *A business entity that facilitates a money laundering offense in a substantial manner is subject to forfeiture in its entirety as a property involved in money laundering.*

It is well settled that a business entity that facilitates a money laundering offense in a substantial manner is subject to forfeiture, in its entirety, as property involved in money laundering. *See, e.g. United States v. Baker*, 227 F.3d 955, 969-70 & n.3 (7th Cir. 2000) (defendant's business premises were "clearly forfeitable" as involved in money laundering because "not only did [money laundering] transactions occur on the premises; the conspiracy was obviously run from this compound. As the key to [defendant's] operation, it was obviously 'involved in' the conspiracy"); *United States v. Overstreet*, 2012 WL 5969643 at 13-14, 18-20

7

(D. Idaho Nov. 29, 2012) (where defendant converted the cash receipts of an illegal gambling business into deposits into his night club's business account by cashing third-party checks and installing an ATM machine at the club, the entire business was forfeitable as property involved in money laundering); *United States v. Schlesinger*, 396 F. Supp. 2d 267, 272-73 (E.D.N.Y. 2005) (holding that clothing manufacturing business was involved in money laundering offense because the defendant deposited fraud proceeds into business's operating accounts), *aff'd*, 261 Fed. Appx. 355 (2d Cir. 2008); *United States v. Swank Corp.*, 797 F. Supp. 497, 502 (E.D. Va. 1992) (declining motion to modify restraining order as to corporation's asset on ground that that corporation in its entirety was subject to forfeiture as involved in money laundering because corporation's bank accounts had been used to conduct transactions involving proceeds of mail fraud scheme); *see also In re Restraint of Bowman Gaskins Fin. Group Accounts*, 345 F. Supp. 2d 613, 624 (E.D. Va. 2004) (noting that entire business was forfeitable as property involved in a money laundering offense because business facilitated money laundering activity by conducting transactions involving fraud proceeds through business accounts); *United States v. 155 Bemis Rd.*, 760 F. Supp. 245, 251 (D.N.H. 1991) (business civilly forfeitable under section 981 because corporate checks were used to make drug trafficker's purchase and improvement of real property with drug money appear to be legitimate business activity).

Where a business is subject to forfeiture in its entirety as property involved in money laundering, then the proceeds that the business earns from the sale of one its business assets is also subject to forfeiture as income traceable to the business. That is so because section 981(a)(1)(A) requires forfeiture of "any property, real or personal, involved in such [money laundering] offense, or any property *traceable to* such property." 18 U.S.C. § 982(a)(1) (emphasis added); *see also Schlesinger*, 396 F. Supp. 2d at 272 (holding that if defendant's real property was forfeitable as property involved in the money laundering offense, then the proceeds

8

of the sale of such property is forfeitable).

    c. *Upon application and showing of probable cause, a District Court is required to restrain any assets subject to forfeiture.*

"Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes." *Kaley v. United States*, 571 U.S. 320, 323 (2014); *see also* 21 U.S.C. § 853(a). The Supreme Court has long recognized that "[f]orfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." *Id.* (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630 (1989)). Accordingly, as the Supreme Court has also long recognized, "there is a strong governmental interest in obtaining full recovery of all forfeitable assets." *Caplin & Drysdale*, 491 U.S. at 631. "In line with that interest, [21 U.S.C.] § 853(e)(1) empowers courts to enter pre-trial restraining orders or injunctions to 'preserve the availability of [forfeitable] property' while criminal proceedings are pending." *Kaley*, 571 U.S. at 323 (quoting *Caplin & Drysdale*, 491 U.S. at 631).

Section 853(e)(1) provides:

> Upon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property [subject to direct forfeiture] for forfeiture under this section – (A) upon the filing of an indictment . . . charging a violation . . . for which criminal forfeiture may be ordered . . . and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section . . .

21 U.S.C. § 853(e)(1); *see also* 18 U.S.C. § 982(b)(1) (incorporating § 853(e) procedures into criminal forfeiture proceedings).

The issuance of a pre-trial restraining order is mandatory if the Government makes the appropriate probable cause showing. *United States v. Monsanto*, 491 U.S. 600, 612-613 (1989) (holding that the court's discretion with respect to a restraining order relates only to the manner

9

of the restraining, and noting that the word "may" in section 853(e) means only that the district court may enter a restraining order if the government requests it, but not otherwise, and that it is not required to enter the order if a bond or other means exists to preserve the property; the word "may" "cannot sensibly be construed to give district court[s] discretion to permit the dissipation of the very property that section 853(a) requires to be forfeited upon conviction.").

The legal standard for issuing a restraining order is whether there exists probable cause to believe that the property sought to be restrained is forfeitable. *Kaley*, 571 U.S. at 323 (citing *United States v. Monsanto*, 491 U.S. 600, 615-16 (1989)). This probable cause determination has two parts, reflecting the substantive requirements of federal asset forfeiture law: "There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 571 U.S. at 323-24. But the probable cause standard itself "is not a high bar." *Id.* at 338. It requires "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.*

In determining whether probable cause exists for purposes of issuing a restraining order, the district court may – and indeed, *must* – rely upon the probable cause conclusions that the grand jury made in the indictment. *Kaley*, 571 U.S. at 340-41 ("If the question in a pre-trial forfeiture case is whether there is probable cause to think the defendant committed the crime alleged, then the answer is: whatever the grand jury decides."). That is because a grand jury's indictment "conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged…The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Id.* at 328-330.

Whether the district court may rely upon the grand jury's indictment to make only one, or both, probable cause findings necessary to issue a restraining order turns on the scope of the

10

grand jury's probable cause conclusions in the indictment – namely, whether the grand jury made only conclusions that the defendant committed the crime giving rise to forfeiture or whether the grand jury also made conclusions as to whether the property at issue had the requisite connection to the crime. *See*, *e.g.*, *United States v. Real Property Located at 1407 N. Collins St.*, 901 F.3d 268 (5th Cir. 2018) (holding that grand jury's probable cause finding in related criminal case – that claimant had committed wire fraud – established the first of the two probable cause showings that government must make to restrain property pre-trial). Indeed, the district court may base a restraining order probable cause finding based on the grand jury's probable cause conclusions in an indictment, a supplemental affidavit, or both. *See, e.g.*, *United States v. Kaley*, 579 F.3d 1246, 1259 (11th Cir. 2009) (noting that the court relied on the grand jury's finding of probable cause supplemented by an agent's affidavit); *United States v. Simpson*, 2011 WL 195676, *5 (N.D. Tex. Jan. 20, 2011).

> d. *A District Court may issue a post-indictment, pre-trial restraining order under 21 U.S.C. § 853(e)(1)(A)* ex parte.

Section 853(e)(1)(A) authorizes a district court to issue a post-indictment, pre-trial restraining order *ex parte*. *Compare* § 853(e)(1)(A) (authorizing issuance of post-indictment restraining order without any express reference to a hearing) *with* § 853(e)(1)(B) (authorizing issuance of pre-indictment restraining order only after notice and opportunity for hearing are given to persons appearing to have interest in property). *See United States v. Kirschenbaum*, 156 F.3d 784, 792 (1998) (noting that § 853(e)(1)(A) does not statutorily require notice or hearing for post-indictment protective orders).[2]

---

[2] Although it has been an open question, ever since the Supreme Court decided *Monsanto* 30 years ago, as to whether the Fifth Amendment due process clause requires a pre-restraint hearing on a post-indictment restraining order application, *see Monsanto*, 491 U.S. at 615 n.10; *Kirschenbaum*, 156 F.3d at 792; *United States v. Jones*, 844 F.3d 636, 640 (7th Cir. 2016), the United States is not aware of any published federal decision holding the *ex parte* application procedure authorized by § 853(e)(1)(A) unconstitutional or otherwise requiring a *pre-restraint* hearing on this Fifth Amendment due process ground.

Once the restraining order is issued and served on the defendant, the defendant has a conditional due process right to a limited post-restraint hearing to ensure that the seizure does not violate a defendant's qualified Sixth Amendment right to counsel of choice. Specifically, if "the defendant presents a bona fide need to utilize assets subject to the restraining order to conduct his defense" and "the district court finds that the defendant does not have other assets from which such payments can be made," then the district court must hold an "immediate, post-restraint, adversary hearing" to "require the government to demonstrate the basis for its assertion, contained in the indictment, that the assets are subject to forfeiture." *United States v. Moya– Gomez,* 860 F.2d 706, 730 (7th Cir.1988). In order to demonstrate a "bona fide need," a defendant must do more than "submit[ ] a bare-bones affidavit asserting that he personally lack[s] sufficient funds to obtain counsel of his choice." *Kirschenbaum*, 156 F.3d at 792.

If the district court finds that the defendant has insufficient alternative assets with which to pay counsel – and if the government fails to justify its retention of all the frozen assets by making the required nexus showing – "then the court must order the release of funds in an amount necessary to pay reasonable attorneys' fees for counsel of sufficient skill and experience to handle the particular case." *Moya-Gomez*, 860 F.2d at 730. Unless the court grants defendant a hearing regarding the Sixth Amendment, and agrees to modify the order, the *ex parte* order remains in effect through trial. *Kirschenbaum,* 156 F.3d at 791-93.

Courts in this district have routinely granted such orders, *ex parte*, when requested by the Government. *See e.g., United States v. Ganos*, 18-CR-62, ECF 115 (restraining installment payments due and owing based on property subject to forfeiture), *United States v. Patterson*, 13-CR-193, ECF 5 (restraining defendant's franchise operation on the basis of Grand Jury's probable cause findings of both criminal activity and property nexus).

## III. ARGUMENT

In this case, the Grand Jury concluded that there is probable cause to believe that Defendant engaged in a variety of controlled substance offenses, that he utilized the S2 Real Estate Business to facilitate those offenses, and that each of the forty-three LLCs, and the assets owned thereby, were used to facilitate Defendant's controlled substance offenses. ECF 102, ¶ 1, pp. 40-42. The Grand Jury also concluded that Defendant engaged in concealment money laundering in violation of 18 U.S.C. § 1956(a) and that there was probable cause to believe that Defendant utilized the S2 Real Estate Business, and each of the forty-three LLC's and the assets owned thereby, to facilitate those controlled substance offenses. *Id.* at ¶ 1, pp. 43-45.

The Grand Jury's probable cause findings are further supported by the Affidavit in support of the Criminal Complaint, which explained how Defendant operated S2 Real Estate to rent properties to tenants he knew to be drug traffickers specifically for the purpose of facilitating the distribution of controlled substances and how Defendant used his business to assist traffickers in evading law enforcement scrutiny. *See* Ex. A at ¶¶ 59-134. For example, the affidavit sets forth facts establishing that Defendant rented properties held by the S2 Real Estate LLCs to tenants he knew to be drug traffickers with the explicit understanding and purpose that the properties be used for storing and distributing controlled substances. For example:

- Stair visited the drug traffickers to whom he rented the properties and had the opportunity to observe their drug trafficking activities, *See id.* at ¶113; 190-191;

- Stair sent employees to the drug-involved premises for the purpose of fixing surveillance systems utilized to protect the drug trafficking activities, *id.* at ¶69-70;

13

- Stair advised putative drug traffickers interested in utilizing properties owned by the S2 Real Estate LLCs for drug trafficking on how to do so while evading law enforcement scrutiny, *id.* at ¶ 113;

- Stair provided warnings to the drug traffickers who rented the S2 Real Estate LLC properties when law enforcement was preparing to conduct search warrants or investigations into those individuals, *id.* at ¶¶ 135-143; ¶ 113.

Similarly, the affidavit in support of the criminal complaint explained facts sufficient to establish that there is probable cause to believe that Defendant used the S2 Real Estate Business, the relevant LLCs, and the attendant properties to facilitate the money laundering offenses charged in Counts Thirty-Three to Thirty-Five. *Id.* at ¶¶ 361-383. Indeed, Defendant used the S2 Real Estate business bank accounts to conduct the money laundering transactions specified in Counts Thirty-Four and Thirty-Five of the Indictment. Moreover, the same S2 Real Estate bank accounts received all of the profits of Defendant's real estate business, including the profits derived from his drug-trafficking activity. Thus, there is ample probable cause to find that Defendant's business, including its assets were involved in the money laundering offenses charged in the indictment. And the profits of that business are, therefore, traceable to those offenses.

Based on both the Grand Jury's findings, as well as the affidavit in support of the criminal complaint, this Court has ample basis to find probable cause to believe that Defendant's Company, S2 Real Estate LLC, was involved in a conspiracy to maintain drug-involved premises, drug trafficking, and a conspiracy to engage in money laundering. ECF 102.

Indeed, paragraph 1 of the Indictment explains how Defendant used that business, including the forty-three LLCs that constitute it, to conceal and disguise the true nature of his drug-trafficking conduct by using the business to create an air of legitimacy that allowed him to

14

evade law enforcement detection. *Id.* Paragraph 1 similarly describes the way in which Defendant commingled his drug-trafficking-derived proceeds with his legitimate proceeds in an effort to further conceal the illegal nature of his activity. Defendant's use of his business assets in this way makes those assets forfeitable based on the well-settled precedent described above. And because the profits of those forfeitable business assets are traceable to that forfeitable property, those proceeds are similarly forfeitable here.  18 U.S.C. § 982(a)(1) (emphasis added); *see also Schlesinger*, 396 F. Supp. 2d at 272.

Given that Defendant's assets, and the profits therefrom, are forfeitable in the event of a conviction in this case, those assets are subject to a post-indictment restraint under 21 U.S.C. § 853(e)(1) and 18 U.S.C. § 982(b)(1).

Thus, the United States request that this Court enter such a restraining order here and that the other require Defendant to direct Smart Assets to turn over all net proceeds of the S2 Real Estate LLCs named in the Indictment to the United States Department of Homeland Security, Homeland Security Investigations (HSI) so that those funds can be deposited into the Treasury Suspense Account ("TSA"), held by the Treasury Executive Office for Asset Forfeiture ("TEOAF") and held in escrow for potential forfeiture upon resolution of this criminal case. Of course, the government recognizes that the decision of whether the funds at issue here will ultimately be forfeited is not yet ripe. But, the requested order here does not determine the forfeiture question; it merely preserves the assets for potential forfeiture because the TSA serves only as a repository fund for seized assets. Because the government does not have title to the funds held in the TSA, those funds are not government property and cannot be expended. TSA balances can only be transferred to the Treasury Forfeiture Fund upon successful conclusion of a forfeiture action, and any funds held in the TSA that are not ultimately forfeited are returned to

15

the appropriate parties. The TSA, therefore, serves only as an escrow fund for funds that the government as seized – or, as here, that the government seeks to have restrained – for forfeiture.

Because the restraining order seeks to escrow only the net proceeds of the forfeitable business entities, the relief does not substantially change the status quo. Indeed, Defendant's counsel has represented that Smart Assets is currently under the direction to escrow net proceeds for the S2 Real Estate LLCs pending resolution of the instant litigation. The requested changes here – that the escrow fund be managed by the Treasury Executive Office for Asset Forfeiture rather than a private corporation with a business relationship with the Defendant – is a reasonable precaution to ensure that any funds subject to forfeiture are adequately preserved.

## IV.    CONCLUSION

Relevant binding authority calls for the issuance of a post-indictment restraining order to preserve forfeitable assets. That authority also holds that businesses that facilitate drug trafficking and/or are involved in money laundering are forfeitable in their entirety and that proceeds *traceable* to those forfeitable businesses are similarly forfeitable. In this case, a Grand Jury concluded that there was probable cause to believe that Defendant's business, constituting forty-three LLCs and their assets, facilitated Defendant's controlled substance offenses and was involved in money laundering. The Grand Jury further concluded that there was probable cause to believe that those forty-three LLCs, and their assets, were forfeitable. Thus, the Government is entitled to restrain the proceeds of those LLCs under 21 U.S.C. § 853(e)(1), and therefore, asks the Court to issue such an order, a draft of which is attached hereto.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2026.

Respectfully submitted,

/s/ *Julie F. Stewart*

KATHERINE M. HALOPKA-IVERY
JULIE F. STEWART
Assistant United States Attorneys

17

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                    Case No. 26-CR-94

SAMUEL P. STAIR,

        Defendant.

## RESTRAINING ORDER

Upon consideration of the United States of America's application for a post-indictment restraining order, under 21 U.S.C. 853(e)(1), to preserve the availability for forfeiture of certain property in which the Defendant Samuel P. Stair has an ownership interest, namely, forty-three LLCs and their attendant assets, as detailed in Exhibit A hereto, and upon finding probable cause to enter the requested order,

IT IS HEREBY ORDERED that the United States' application for a restraining order is GRANTED.

IT IS FURTHER ORDERED that:

(1) Defendant Stair and his agents be and hereby are restrained from selling, transferring, assigning, giving away, or borrowing any additional sums against Defendant Stair's interest in any or all of the following LLCs, or the assets held thereby (collectively referred to herein as the S2 Real Estate LLCs):

    a. S2 Real Estate Group I LLC; S2 Real Estate Group 2, LLC; S2 Real Estate Group 3 LLC; S2 Real Estate Group 4 LLC; S2 Real Estate Group 5, LLC; S2 Real Estate Group 6, LLC; S2 Real Estate Group 7, LLC; S2 Real Estate Group 8, LLC; S2 Real Estate Group 9 LLC; 9330 W Lincoln S2 LLC; S2 Real Estate 10101 W Capitol LLC; S2 Real Estate 1700 Lincoln LLC; S2 Real Estate 1957 S

Congo, LLC;  S2 Real Estate 2033 S 17th LLC; S2 Real Estate 2126 S 17th, LLC; S2 Real Estate 2319 2327 Michigan, LLC; S2 Real Estate 2509 W Becher LLC; S2 Real Estate 2612-20 W Greenfield LLC; S2 Real Estate 2903-5 W Pierce, LLC; S2 Real Estate 4631 Sonseeahray, LLC; S2 Real Estate 5916 W Burnham LLC; S2 Real Estate 605 N 30th, LLC; S2 Real Estate 729 21st, LLC;  S2 Real Estate 7505 W Bradley LLC;  S2 Real Estate 7601 W Becher LLC;  S2 Real Estate Group 2323 S 5th, LLC;  S2 Real Estate 2333 2345 S 9th Place, LLC; S2 Real Estate Group 829 S 19th, LLC; S2M2 Real Estate 2804 W Kilbourn, LLC; HMS2 Real Estate LLC; S2 1613 Bolivar, LLC; S2 Real Estate 9730 LLC, S2 Real Estate 1206-8 S 5th Pl LLC, S2 Real Estate 1517 S 23RD LLC; S2 Real Estate 1630 S 32ED, LLC; S2 Real Estate 1815 1733 LLC; S2 Real Estate 2224 LLC; S2 Real Estate 2925 Lincoln,  LLC; S2 Real Estate 6900 W Lincoln LLC; S2 Real Estate Group 1836, LLC; S2 Real Estate Group 251927 LLC; S2 Real Estate, LLC; and  S2 Real Estate Group Partners LLC.

(2) Defendant Stair is hereby restrained from exercising managerial or operational control over the S2 Real Estate LLCs and is required, instead, to engage a third-party management company to handle the day-to-day business and financial operations of the S2 Real Estate LLCs;

(3) Defendant Stair and his agents are hereby ordered to direct the third-party management company to provide to the United States Attorney's Office for the Eastern District of Wisconsin, on the first business day of each month:

    a. Written confirmation that, to the knowledge of Stair and his agents, including the third-party management company which is responsible for operating the S2 Real Estate LLCs, that the S2 Real Estate LLC is in compliance with all state and local laws related to leasing residential and commercial real estate properties and that all taxes and other payments due and owing on any mortgages or liens on the properties have been made current;

    b. Written accounting of the profits and losses incurred in the prior month, any outstanding sums due and owing to the S2 Real Estate LLCs, any outstanding sums due and owing from the S2 Real Estate LLCs, and any expenditures in excess of $10,000 expected in the next 30 days;

19

(4) Defendant Stair and his agents are hereby ordered to escrow all net profits of the S2 Real Estate LLCs, which are calculated as of the last business day of each month after deducting and paying any taxes, fees, mortgages, liens, payroll, or other payments due and owing on any legal obligation incurred by the S2 Real Estate LLCs.

(5) Defendant Stair and his agents are hereby ordered to direct those escrowed funds to the Treasury Executive Office for Asset Forfeiture ("TEOAF") for deposit into the Treasury Suspense Account ("TSA") by the fifteenth business day of each month.

(6) That the TEOAF shall promptly deposit any future payments that the TEOAF receives from Stair and his agents under the paragraphs above in the TSA. The TEOAF shall hold the payments and funds that it deposits into the TSA under this paragraph in escrow for potential forfeiture or return upon resolution of this criminal case, including all asset forfeiture proceedings.

(7) This Court shall retain jurisdiction of this matter for all purposes. The terms of this order shall remain in full force and effect pending further order of the court or entry of one or more judgments in this criminal case disposing of the monies at issued.

So ordered at  Milwaukee, Wisconsin, this __ day of June, 2026.

By the Court:

_____
**HON. BRETT H. LUDWIG**
**United States District Judge**

20