# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 26-CR-094

SAMUEL STAIR,

Defendant.

## RESPONSE TO UNITED STATES' EX PARTE APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER TO PRESERVE FORFEITABLE ASSETS (EVIDENTIARY HEARING AND ORAL ARGUMENT REQUESTED)

COMES NOW, Samuel Stair, by and through counsel Lauren Gorman and Daniel M. Adams, hereby responds to the United States' *ex parte* application for a post-indictment restraining order.

## I. Introduction

The Government's *ex parte* motion presents an extraordinary request for extraordinary relief. Before producing meaningful discovery, before the defense has had any opportunity to test the Government's sweeping allegations, and while the Government continues to withhold the factual evidence to support its unprecedentedly broad forfeiture theory, it asked this Court to exercise its equitable authority to impose additional restraints on virtually every significant asset associated with Sam Stair's life's work.

The Government's theory is breathtaking in both scope and consequence. It reaches every meaningful asset accumulated over decades of legitimate commercial activity (a business built in the extremely difficult and demanding field of affordable housing). Yet the indictment

provides little insight into the factual basis of the forfeiture allegations considering their breadth. The barebones allegations of (1) Stair receiving $850 from an alleged drug trafficker paid as rent and (2) the intermingling of some tenant rents with alleged drug trafficker rents during a regular sweeping of funds from a business account to a brokerage account, are held against a proposed forfeiture of a multi-million dollar real estate portfolio. That disconnect alone warrants careful judicial scrutiny before any further restraints are imposed.

Equally troubling is the way the Government has chosen to litigate this issue. It first sought relief in secret, asking the Court to proceed *ex parte* while refusing to disclose any detail of its request to defense counsel. This Court properly rejected that approach, recognizing that the fundamental requirements of due process are notice and a meaningful opportunity to be heard and expressing concern with the Government's effort to proceed "behind the backs of Stair and his counsel." Those concerns did not arise in a vacuum. They reflect a broader pattern in which the Government has asserted expansive allegations while withholding the evidence necessary to test them in the adversarial process that our Constitution requires.

That procedural posture is especially significant because the Government alone controlled when to seek an indictment. It investigated the case for months before invoking the coercive power of the federal criminal process. Having made that decision, it cannot now rely upon the size or complexity of the case to justify delaying meaningful discovery while simultaneously seeking additional restrictions on the Stair's property. Complexity may justify additional time to prepare for trial; it does not excuse a failure to provide discovery sufficient to permit meaningful litigation of the Government's own motions. The Sixth Amendment, the Speedy Trial Act, Rule 16, and the Due Process Clause all presuppose prosecutorial diligence once charges are filed.

Nor is this a case in which the status quo threatens the availability of assets. This Court has already fashioned comprehensive conditions of release that prohibit new credit, require professional asset management, mandate reporting of significant financial transactions, and

subject expenditures over $10,000 to Pretrial Services disclosure and approval. Those conditions have been faithfully observed.[1] The Government identifies no violation, no attempted dissipation of assets, and no evidence that the existing safeguards are inadequate. Instead, it seeks an additional layer of restraint without demonstrating why the carefully crafted protections already imposed by this Court are insufficient.

In fact, the Government appears to have never contacted the third-party-management company currently managing the S2 Real Estate portfolio. One would think the Government would inquire about this company's competency or fidelity to the interests which should be paramount (*i.e.* the proper upkeep of tenants and preservation of the real property assets at issue) before seeking this extraordinary and unneeded restraints. (*See* Exhibit A – Affidavit of Adam McCarthy).

Ultimately, this motion is not about whether the Government may pursue criminal forfeiture if it proves its case at trial. It is about whether, before meaningful discovery has been produced and before the Government's aggressive theories have been subjected to any adversarial testing, this Court should exercise its discretion to impose further extraordinary restraints based largely upon those untested allegations. The governing statutes do not compel

---

[1] Counsel notes that one property in Mr. Stair's Milwaukee portfolio – a condo located at 1028 East Juneau Ave - is unique from his other properties and is part of Knickerbocker on the Lake. It is a short-term rental property owned by S2 Real Estate 6, LLC and is regularly rented by a large, local construction company. It continues to be managed by Lynn Obermeier, not by Mr. Stair directly. Ms. Obermeier lives on site and specializes in short-term commercial rentals. To date, rents have not exceeded the $10,000 reporting threshold. There has been a single payment made of $4,250, a portion of which was used to compensate Ms. Obermeier for management services and costs.

The property is not listed in the Complaint, but S2 Real Estate 6 LLC is among the entities listed in the indictment presumably under the broad facilitation theory.

If the Court prefers that this property's rents be placed into Smart Assets segregated accounts, Mr. Stair does not object. Given Ms. Obermeier's on site management and specialized experience, Counsel's preference is to provide reporting to Pretrial Services in the same manner as Smart Assets. To date, no transactions exceeding the $10,000 reporting threshold have been made.

3

that result. They entrust this Court with discretion precisely because pretrial restraint is an exceptional remedy whose necessity must be demonstrated, not presumed.

The Government's request should therefore be denied. At minimum, the Court should require an adversarial hearing supported by meaningful discovery sufficient to permit the defense to challenge the Government's assertion that each asset it seeks to restrain bears the requisite statutory nexus to the charged offenses.

## II. Factual and Procedural Background

A 176-page Complaint was filed on April 21, 2026. Mr. Stair was arrested on April 22, 2026, and made his initial appearance on the same date. At his detention hearing, the Government moved for detention under 18 U.S.C. § 3142(f). A detention hearing was held on April 27, 2026, after which the magistrate judge issued a detention order. An indictment was issued on May 5, 2026 and a press release was issued by the Government on May 7, 2026.

The Government's indictment and forfeiture allegations are sweeping and hard to fully understand. The indictment appears to encompass every business associated with Stair, together with his personal residence, personal vehicle, and virtually every significant asset accumulated over his lifetime of work. It encompasses properties Stair purchased twenty years ago.

Notably, among the properties listed as substitute assets is 1412-1414 West Greenfield. That property is owned by Iscirclepraxis LLC – an LLC owned by Spencer Stair – not Sam Stair. Stair and his company S2 Real Estate served merely as a property manager. Mr. Stair has zero ownership interest in the property. (Exhibit B – Declaration of Sam Stair). This is notable in that listing it as a substitute property demonstrates a lack of due diligence generally demonstrated by the Government and should give the Court further pause regarding the requested relief the Government sought on an *ex parte* basis. *See* 21 U.S.C. § 853(p)(requiring that the Defendant owns the substitute property sought). This clear mistake has been

4

identified without the benefit of reviewing discovery, let alone, a hearing on the Government's theories and factual basis.

This Court reversed the Magistrate Court's detention order on May 29, 2026, and an Order setting conditions was filed on the same date. The conditions include not opening new lines of credit, Smart Asset Management to notify Pretrial Services of $10,000 transactions within 48 hours and Stair making no transactions above $10,000 without approval from Pretrial Services. There have been no pretrial violations.

The first batch of discovery – which consisted of various financial records was produced June 4, 2026 – over six weeks from filing the complaint. Those records contained no information presently usable by the defense team and did not contain any analysis which was presumably conducted by the Government before alleging the broad forfeiture allegations and theories. On July 1, 2026, undersigned attorney Adams requested an update on discovery and was told some of the phone extractions would be available the following Monday. On July 7, 2026, counsel received an email advising a hard drive was ready for pickup. Counsel has yet to review the additional discovery. If it does not contain any financial analysis that would be necessary to challenge the nexus between the listed LLCs and the Government's forfeiture allegations counsel will move to compel such analysis and underlying data well before any scheduled hearing.

The *ex parte* motion at issue here was filed by the Government on June 16, 2026. Counsel endeavored in good faith to discuss the Government's *ex parte* filing. On June 17, 2026, attorney Adams emailed the Government and requested a call to discuss what the *ex parte* filing pertained to. The prosecutors declined to provide any substantive information other than it relates to forfeiture. On July 1, 2026, attorney Adams again requested to discuss the *ex parte* filing and obtain a copy. Defense counsel was told unequivocally that the Government did not intend to provide the motion to defense counsel.

5

On July 2, 2026, this Court rejected the Government's attempt to proceed *ex parte* and noted that the basic requirements of due process are "notice and a meaningful opportunity to be heard." The Court expressed "concerns about the Government's approach" and rejected the Government's request to "act behind the backs of Stair and his counsel." ECF No. 194.

### III. Notable issues with the factual and procedural history

The familiar observation that a determined prosecutor can persuade a grand jury to "indict a ham sandwich" is more than a colorful aphorism. It reflects the structural reality that grand jury proceedings are *ex parte* and one-sided. We all are versed in the understanding an indictment is merely an accusation. It is not evidence, and it cannot substitute for the adversarial testing that is the cornerstone of our constitutional system.

The Government's theory – as delineated in the complaint and subsequent indictment - strains common sense. Taken at face value, it asks a jury to infer that a man who spent decades building legitimate real estate holdings, businesses, and substantial assets did so not to create wealth or operate successful enterprises, but principally to facilitate the activities of what the indictment itself portrays as petty, small-scale drug traffickers. That proposition is, to say the least, difficult to reconcile with ordinary experience and economic reality. One is left to wonder whether the Government truly expects the Court to believe that a lifetime spent constructing a substantial real estate portfolio was merely an elaborate means of serving such an unremarkable criminal enterprise. The disconnect between the scale of the Defendant's legitimate endeavors and the Government's theory is not merely striking—it underscores why those allegations deserve scrutiny rather than automatic acceptance.

It is particularly notable that in the money laundering counts the Government identified two transactions - $850.00 in cash obtained from McDade for use of a property and a transfer of $70,482.50 of combined tenant payments into a Charles Schwab account. And yet the indictment alleges that upon conviction of money laundering counts every single LLC

6

that Stair ever owned was forfeitable – along with the vast real estate portfolio those LLCs hold.

Equally troubling is the procedural course the Government elected to follow. Rather than proceeding directly by indictment, the Government first chose to file a criminal complaint, despite the apparent existence of a sitting grand jury—as demonstrated by the indictment that followed almost immediately thereafter. The Government has offered no explanation why proceeding by complaint was necessary under those circumstances. A reasonable inference is that the complaint served little procedural purpose while creating the risk of unnecessary pretrial publicity and potential taint of the prospective jury pool before the grand jury had formally acted.

Notwithstanding the indictment's extraordinary breadth, those allegations presently stand and despite numerous requests, the defense has been largely denied the discovery necessary to test them. Without meaningful discovery, the defense cannot determine the factual basis for the Government's assertions, cannot meaningfully speculate about what evidence was presented to the grand jury, and cannot intelligently prepare a Rule 6 motion establishing the particularized need required to obtain grand jury materials. Thus, the Government's unprecedented allegations remain insulated from meaningful adversarial testing—not because they have been proven, but because the defense has been deprived of the means to challenge them.

Yet the Government is not content to allow its sweeping allegations to await that testing. It now asks this Court to exercise its discretion to enter the extraordinary remedy of a pretrial restraining order—and asked to do so *ex parte*. The governing statutes do not compel that result. Congress vested this Court with discretion precisely because such relief is exceptional and should be granted only after careful consideration of its necessity and its constitutional consequences.

Significantly, the Court has already recognized that the existing conditions of release—which require scrutiny and oversight of the Stair's financial transactions—provide substantial protection against the dissipation of assets. Those conditions already accomplish the Government's stated objective of monitoring Stair's financial activity. The Government has not demonstrated why those protections are inadequate or why the extraordinary additional step of restraining the proceeds of those LLCs is necessary. The attached affidavit of Smart Asset's principal provides insight into their management of the S2 portfolio. (Exhibit A – Affidavit of Adam McCarthy).

Indeed, those existing conditions already leave Stair hamstrung in preparing his defense. The practical consequences of the Government's forfeiture allegations extend far beyond Stair himself. Even where competent counsel concludes that the Government's theory is legally unsound, overinclusive, or wholly unsupported by the facts, prudent counsel will nevertheless hesitate before accepting fees derived from assets specifically identified in the indictment as subject to forfeiture.

### IV. Legal Standard

A grand jury's finding of probable cause that property is subject to forfeiture does not eliminate the need for the Government to seek a court order to restrain that property pretrial. Under 21 U.S.C. § 853(e), the Government must still apply to the district court for a restraining order, injunction, or other protective order. The grand jury's probable cause determination is legally significant—it satisfies the probable cause element required to obtain the restraining order and insulates that finding from challenge at any subsequent hearing—but it does not itself operate as a self-executing restraint on the property. A separate judicial act is always required.

The primary federal statute governing pretrial restraint of criminally forfeitable property is 21 U.S.C. § 853, enacted as part of the Comprehensive Crime Control Act of 1984

and made broadly applicable to federal criminal forfeitures through 28 U.S.C. § 2461(c). Section 853(e) is titled "Protective orders" and, together with § 853(f)'s seizure warrant provision, sets out the statutory mechanisms for pretrial restraint 21 USCA § 853.

Section 853(e)(1) provides that upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of forfeitable property 21 USCA § 853. The statute contemplates two distinct procedural postures depending on whether an indictment has been filed:

An indicted defendant is not entitled to a hearing on the first issue—whether there is probable cause to believe that the defendant committed an offense permitting forfeiture—because "the grand jury's determination is conclusive." *Kaley v. United States*, 571 U.S. 320, 331 (2014) (determining that an indicted defendant does not have a constitutional right to contest the grand jury's prior determination that there was probable cause to believe that the defendant committed an offense permitting forfeiture). The Supreme Court noted, in a footnote, that the same cannot necessarily be said of the forfeiture allegations:

> But the tracing of assets is a technical matter far removed from the grand jury's core competence and traditional function—to determine whether there is probable cause to think the defendant committed a crime. And the judge's finding that assets are not traceable to the crime charged in no way casts doubt on the prosecution itself. So that determination does not similarly undermine the grand jury or create internal contradictions within the criminal justice system.

*Id.* at 1099 n. 9.

The *Kaley* Court also noted that lower courts had generally been providing a hearing to an indicted defendant who sought the release of funds, at which the court would determine whether there was probable cause to believe that the assets were traceable or sufficiently related to the crime charged in the indictment. *Id.* at 1095. However, the *Kaley* Court did not express an opinion on that matter. *Id.* at 1095 n.3.

The Seventh Circuit held, prior to *Kaley*, that it violates the Fifth Amendment due process clause to restrain property without requiring the Government to establish the factual basis for its assertions that the funds are subject to forfeiture if the defendant has demonstrated a bona fide need to use the assets to conduct his defense. *United States v. Moya–Gomez*, 860 F.2d 706, 730 (7th Cir.1988). Therefore, under Seventh Circuit law, if a defendant can demonstrate a bona fide need to use the assets to conduct his defense, the Government must demonstrate the basis for its assertion that the assets are subject to forfeiture (i.e., that there is probable cause to believe that the property at issue has the requisite connection to the crime). *United States v. Toran*, No. 13-30072, 2015 WL 1968698, at *2–3 (C.D. Ill. May 1, 2015)

## V. Facially obvious weaknesses in the Government's forfeiture theories

The Government's forfeiture allegations encompass every business and personal asset associated with Stair including his personal residence, personal vehicle, savings, and substantial real property portfolio. Based on the indictment and complaint (again without the benefit of discovery) the Government's forfeiture theory appears to be fundamentally overbroad, lack asset-specific nexus, and suffer from tracing and ownership problems.

### A. Drug forfeiture under 21 U.S.C. § 853

For convictions under federal drug statutes, including 21 U.S.C. §§ 841, 846, and 856, criminal forfeiture may reach:

- property constituting or derived from proceeds obtained directly or indirectly as a result of the drug offense; and

- property used, or intended to be used, to commit or facilitate the offense.

### B. Money-laundering forfeiture under 18 U.S.C. § 982(a)(1)

For money laundering, the Government may seek forfeiture of property "involved in" the laundering offense and property traceable to such property. This is broader than ordinary

proceeds forfeiture but still requires a nexus between the charged laundering transactions and the property sought.

The indictment uses an incredibly broad brush to allege Stair used business accounts to conceal drug proceeds and used the legitimacy of his real estate business to facilitate drug trafficking and money laundering. This untested and broad theory has facial weaknesses:

### C. Rule 32.2 burden and nexus requirement

In criminal forfeiture, forfeiture is part of the defendant's sentence. The Government must establish the requisite nexus between the property and the offense by a preponderance of the evidence. The issue is not merely whether Stair is found guilty, but whether each asset is forfeitable under the governing statute.

That distinction is critical. Under our law, a sweeping conspiracy theory may support guilt on certain charged counts, but forfeiture requires an asset-specific inquiry.

### 1. Overbreadth of seeking 43 LLC ownership interests

The most obvious vulnerability is the reported request to forfeit Stair's ownership interest in 43 property-holding LLCs. Even if the Government proves that some Stair-owned properties were used as drug premises, it does not follow automatically that _every_ LLC interest was proceeds, involved in laundering, or used to facilitate drug trafficking.

The Government will need to show, with respect to each LLC interest, one or more of the following:

- the LLC itself held property used to facilitate the drug offenses;

- the LLC received drug proceeds or laundered funds;

- the LLC was part of the mechanism used to conceal, move, or disguise proceeds;

- the LLC interest was acquired or maintained with tainted funds; or

11

- the LLC functioned as a nominee or alter ego for criminal activity.

A generalized allegation that Stair's real estate business supplied "the air of legitimacy" for criminal conduct is not sufficient to forfeit all ownership interests if many LLCs held properties with no demonstrated connection to drug activity.

Simply put – the Government is attempting to convert a premises-specific or rent-specific case into a portfolio-wide forfeiture case without proving the necessary nexus as to each entity.

**2. The "landlord as facilitator" theory depends heavily on knowledge and intent**

The Government's theory was that Stair was not merely a passive landlord, but knowingly and intentionally conspired with drug traffickers. Assuming *arguendo* the Government is able to prove its allegations of conspiracy at trial, that may support forfeiture of particular properties and proceeds depending on gradations of knowledge. Foreseeable gradations that could affect the Court's determination as to each of Stair's properties include:

- knowledge that a tenant has a criminal history is not the same as knowledge that a specific unit will be used for drug distribution;

- failure to evict or poor property management is not the same as maintaining drug-involved premises;

- accepting rent from a suspected dealer is not necessarily accepting drug proceeds;

- informal communications with tenants or "security" personnel may not prove Stair intended or acquiesced in allowing the premises to be used for drug trafficking.

As the Court noted, Stair was not accused of directly buying or selling narcotics, apart from one incident where a sale was discussed, and described his role as "unique" compared to other drug-trafficking defendants. That distinction undermines the expansive forfeiture theory

equating Stair with the traffickers themselves and now seeking to restrain the property and proceeds of every LLC he owns.

### 3. Proceeds forfeiture is vulnerable under *Honeycutt* principles

For drug proceeds under 21 U.S.C. § 853(a)(1), the Government cannot simply impose joint-and-several liability on Stair for all proceeds obtained by the alleged drug-trafficking organizations. Under *Honeycutt v. United States*, 581 U.S. 443 (2017) forfeiture under § 853 is limited to property the defendant personally obtained as a result of the crime.

That creates a major limitation. Even if drug trafficking organizations (DTOs) operating from Stair properties generated substantial proceeds, the Government must prove what benefits Stair himself obtained. If the Government's evidence shows that traffickers obtained drug revenue and Stair received only normal rent, fees, or occasional payments, the forfeitable "proceeds" attributable to Stair are much smaller than the total DTO proceeds.

One of the complaint's theories that Stair "took a cut" of profits is important for the Government. But that allegation must be quantified and proved. The Government has yet to provide meaningful discovery that allows the defense to distinguish between:

- ordinary rent;

- premium rent (due to intentional aid to traffickers);

- cash payments known to be drug proceeds;

- profit-sharing payments;

- security-related payments;

- legitimate property-management income.

Only the tainted categories will be subject to proceeds forfeiture.

13

### 4. Ordinary rent is not automatically drug proceeds

The Government's charging documents appear to suggest that rent received from drug traffickers constitutes proceeds or property derived from maintaining drug-involved premises. That theory has force if Stair knowingly rented properties for drug distribution and the rent was paid from drug money. But even this theory has clear weaknesses that will need to be explored at trial, such as: (1) rent is ordinarily consideration for occupancy, not payment for drug trafficking, (2) a tenant's drug proceeds to pay rent doesn't prove a landlord obtained drug proceeds knowingly, (3) market-rate rent recorded in the ordinary course of business is contrary to any concealment or illicit profit sharing theory, (4) S2 Real Estate's use of the AppFolio property management software should make tracing of legitimate vs. illegitimate payments easy, yet we have heard nothing from the Government as to discrepancies shown by that software, (5) if the Government cannot trace particular rent payments to drug proceeds, proceeds forfeiture becomes more difficult, and (6) if rent was earned through an otherwise lawful landlord-tenant relationship, the Government must prove the criminal taint arises from Stair's knowledge and intent, not merely the tenant's conduct.

Simply put, the Government has an uphill battle to prove Stair liable for the actions of the Government's carefully selected handful of bad tenants out of the tens of thousands of Milwaukeeans Stair has provided affordable housing to over two decades.

### 5. Money-laundering forfeiture may be overinclusive where business accounts were used for legitimate activity

The indictment alleges that Stair used business accounts to conceal drug proceeds. Money-laundering forfeiture can reach property "involved in" laundering transactions, including commingled funds in some circumstances. But this theory is vulnerable where the accounts also handled legitimate rents, mortgages, repairs, payroll, taxes, insurance, and property-management expenses.

14

The Government must prove:

- the relevant funds were proceeds of specified unlawful activity;

- Stair knew the funds represented unlawful proceeds;

- the transactions were designed to conceal, promote, or otherwise satisfy the charged laundering statute; and

- the property sought was involved in or traceable to those laundering transactions.

The Government's phrase "used the air of legitimacy created by his business" is rhetorically useful but legally imprecise. A legitimate business that receives some tainted funds does not automatically become entirely forfeitable. The defense requires transaction-level tracing to challenge any attempt to forfeit whole accounts, whole entities, or whole portfolios based on limited allegedly tainted deposits. To date, it does not appear such discovery has been produced to the defense.

### 6. Seized cash and securities present tracing and commingling vulnerabilities

Though tangential to the direct issue of the LLCs it is notable that Government reportedly seized more than $700,000 from Stair's home and accounts. Stair managed an enormous real estate portfolio that generated substantial cash flow, created cash balances/reserves, and held security deposits. Because Stair built his enterprise over time from being a "one man shop" some of its transaction practices were informal and discretionary. This does not mean it was criminal –it means Stair built his portfolio and business operations from scratch – not from a corporate playbook. His use of Charles Schwab accounts to hold funds indicates he likely had securities or funds acquired before the alleged offense period and had assets that increased in value due to market appreciation. His account balances were often commingled, making tracing essential unless the Government relies on the broader "involved in" theory for laundering. Further, cash found at a residence may raise suspicion but is not

self-proving as drug proceeds, particularly for a real estate operator unless tied to specific drug-related payments.

The defense has yet to see discovery demonstrating proof of source, date of acquisition, account flow, and connection to charged conduct. These items should be proven at a contested hearing before the Government's sought order is granted.

### 7. Risk of conflating criminal liability with forfeiture liability

The Government's broad-brush narrative describes Stair and his LLCs as the "connecting fiber" among multiple drug organizations. That theory may support conspiracy liability if the evidence proves knowing participation (which the defense contests). But forfeiture requires separate statutory analysis than conspiracy. Even the Government's theory does not equate all of the DTOs' proceeds with Stair. But the Government does conflate the DTOs use of a small fraction of real property with Stair's intent to allow or acquiesce drug trafficking. This conflation cannot be allowed, even at this stage, without proof. Broadly treating every legitimate business account as a laundering account because they received some suspicious rent and treating every one of Stair's LLCs as a criminal instrument because a fraction of his real property were temporarily occupied by a handful of low-level traffickers is an unsupportable proposition.

In sum, the Government is pursuing an untested theory that ownership of a substantial property portfolio where a small fraction of the portfolio is "drug associated" means the entire portfolio should be considered a criminal instrument that allows complete forfeiture.

### 8. Pretrial Restraint

The efforts by the Government to restrain the proceeds of all of Mr. Stair's LLC's present additional vulnerabilities. Thus, Mr. Stair requests a hearing to determine:

- whether the proposed restraint reaches untainted assets;

- whether restrained assets are needed to fund defense counsel;

- whether the less restrictive property-management conditions imposed on Stair and Smart Assets undercuts the need for the broad Government restraints or whether the pretrial conditions in place satisfy Section 853(e)(1) and are sufficient preserve the availability of forfeitable property under 21 USCA § 853.

At such a hearing, the Court should hear evidence relevant to the Government's theory as to each individual LLC it wishes this Court to restrain and consider the pretrial conditions in place regarding the current management of Stair's LLCs by Smart Assets.

**VI. Discovery necessary for such a hearing**

The arguments detailed in this pleading are based on the allegations in the complaint and indictment, which as of this filing, are the only meaningful window into the Government's case (the Government did release additional discovery on July 7 – which does not give undersigned counsel sufficient time to analyze for the purpose of this response). The other discovery previously provided in June, various financial records, include no analysis or context and are woefully short of providing the defense the ability to meaningfully engage in any litigation, let alone participate meaningfully in an adversarial hearing.

The Government has virtually complete control over when to seek an indictment. It may spend months or years investigating, reviewing evidence, organizing digital materials, interviewing witnesses, and preparing its case before invoking the coercive power of the court.

Once it elects to indict, however, the constitutional and statutory clock begins to run. The Government cannot reasonably argue that it needs additional months simply to provide evidence that it possessed before indictment. If the prosecution was not prepared to begin meaningful discovery, it was not prepared to indict.

When discovery is delayed: defense investigation is postponed; expert review cannot begin; suppression issues cannot be identified; potential plea negotiations cannot be

17

meaningfully evaluated; trial preparation necessarily stalls. All of these interruptions are pertinent to Stair's case.

Designation as a "complex case" under the Speedy Trial Act permits reasonable additional time because of the nature of the litigation—not because the Government failed to prepare before charging.

Courts have recognized that complex cases require flexibility, but complexity cannot become a blanket justification for indefinite Government delay. The question is not whether the case is large, but whether the Government exercised reasonable diligence. *See United States v. Pikus*, 39 F.4th 39, 58 (2d Cir. 2022)("It neither held the Government accountable for its discovery obligations nor appropriately considered the causes and implications of the extraordinary delays introduced by the Government's dilatory conduct of discovery.")

The defense requests an adversarial hearing on this matter, but for that hearing to be meaningful, defense requires full discovery and the Government's dilatory conduct in this case precludes meaningful adversarial testing of their evidence.

**VII. Mr. Stair requires access to the funds at issue to fund his defense**

Finally, though the Court is free in its discretion to hold an evidentiary hearing without a preliminary showing that Stair is unable to pay for counsel a hearing is required upon such a showing, Stair through counsel submits the following affidavit as a window into the defense's best forecast of funds needed to marshal Stair's defense through trial, (Exhibit D) and statements from Stair and his wife under seal to ensure that he receives meaningful process. (Exhibits B and C).

**VIII. Conclusion**

The Government asks this Court to impose a sweeping pretrial restraint based upon allegations that have yet to be subjected to meaningful adversarial testing. It sought that relief despite having produced no meaningful discovery, despite offering no evidence that Stair has

18

violated any condition of release or attempted to dissipate assets, and despite this Court having already imposed comprehensive financial safeguards that have proven effective. The Government has likewise failed to demonstrate why those existing protections are inadequate or why the extraordinary remedy it seeks is necessary to preserve the availability of forfeitable property.

Accordingly, Stair respectfully requests that the Court deny the Government's application for a post-indictment restraining order. The Court should likewise require the Government to produce all meaningful discovery and conduct a full adversarial evidentiary hearing at which the Government bears the burden of establishing the requisite statutory nexus between each asset it seeks to restrain and the offenses charged, as well as demonstrating why the existing conditions of release are insufficient to protect the availability of any ultimately forfeitable property.

DATED this 9th day of July, 2026.

By:
/s/ Lauren Gorman
_____

Lauren Gorman
Gorman Law PLLC
NV State Bar No. 11580
777 Forest Street, Ste A

s/Daniel M. Adams
_____

Daniel M. Adams
Adams Law Group LLC
Wis Bar No. 1067564
1200 E. Capitol Drive, Ste 360
Milwaukee, WI 53211

19