UNITED STATES OF AMERICA,

   Plaintiff,

  v.          Case No. 26-CR-94

SAMUEL P. STAIR,

   Defendant.

---

## UNITED STATES' REPLY IN SUPPORT OF APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER TO PRESERVE FORFEITABLE ASSETS

---

Though Defendant characterizes the Government's requested restraining order pursuant to 18 U.S.C. § 853(e)(1)(A) as an "extraordinary" remedy, the order requested by the Government is in line with statutory authority, binding precedent, and similar cases in this District. It is also narrowly tailored. It seeks two things: (1) to formalize a status quo about S2's current operation; and (2) to preserve – not forfeit – only *net* assets that are legally forfeitable in the event of a conviction. Notably, Defendant's response does not address the narrow tailoring of the requested order or much of the applicable case law. Instead, Defendant focuses mostly on the ultimate issues in this case: whether the government can prove the charges in the indictment and whether the assets at issue will, ultimately, be subject to forfeiture. Neither the Defendant's disagreement with the Government's theory of liability nor the ultimate question of forfeiture are before the Court at this juncture. Instead, the only issue that is ripe at this point is whether Section 853(e)(1)(A) requires a post-indictment order to preserve assets when the government applies for such an order and demonstrates probable cause. The law says that it does. And no court has held that such statutorily mandated relief requires a pre-restraint evidentiary hearing. Indeed, a defendant is entitled to a hearing challenging probable cause as to forfeitability only post-

restraint, and only after the defendant demonstrates a bona fide need to access some or all the restrained assets to retain counsel.

Because the Government has established the requisite probable cause, which Defendant does not, and cannot, challenge, the Government is statutorily entitled to the requested relief. The Government therefore respectfully requests that the Court issue the requested narrowly tailored order, meant to preserve value and assets for forfeiture, based on the Grand Jury's dual probable cause findings.

**I.**   *A post-indictment restraining order must be issued upon a finding of probable cause.*

As detailed in the Government's opening brief, upon a showing of probable cause, the government is entitled to a post-indictment restraining order under 18 U.S.C. §853(e)(1)(A). (ECF 191); *United States v. Monsanto*, 491 U.S. 600 (1989). Indeed, in *Monsanto*, the Court held that the word "may" in section 853(e) "cannot sensibly be construed to give district court discretion to permit the dissipation of the very property that §853(a) requires be forfeited upon conviction." Thus, the Supreme Court has been clear that Section 853(e)(1)(A) *requires* the Court to issue a restraining order if the Government requests one and makes the appropriate probable cause showing. The Court has discretion to fashion the nature of such an order – but not *whether* to issue the order at all.

Defendant does not address this precedent or the mandatory nature of restraining orders pursuant to Section 853(e)(1)(A). Instead, in the face of that authority, Defendant refers to "Congress vest[ing] this Court with discretion" and suggests that restraining orders are "exceptional" relief that "should only be granted after careful consideration of its necessity and constitutional consequences." (ECF 202, p. 7). Defendant further suggests that the "Government has not demonstrated why [other] protections are inadequate or why the extraordinary step of restraining the proceeds of those LLCs is necessary." *Id.* at p. 8. But neither the text of Section

2

853 nor the caselaw interpreting it characterize restraining orders to preserve forfeitable property as "exceptional" relief. Nor does either the statute or caselaw require the government to demonstrate that alternatives are "inadequate." Instead, Courts have routinely held that restraining orders are *mandatory* once the government demonstrates one thing: probable cause. *See e.g., Monsanto*, 491 U.S. at 600; *Kaley v. United States*, 571 U.S. 320, 323-24 (2014).

That required showing of probable cause has two prongs. "There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Id*. In other words, there must be a finding of probable cause as to criminal conduct and as to nexus.

The grand jury's return of an indictment conclusively establishes the first prong: that the defendant has committed an offense permitting forfeiture. The Supreme Court made this clear in *Kaley*: "If the question in a pre-trial forfeiture case is whether there is probable cause to think the defendant committed the crime alleged, then the answer is: whatever the grand jury decides." *Id.* at 340-41. The Defendant concedes this point. ECF 202, p. 9 (acknowledging that defendant is not entitled to a hearing on "whether there is probable cause to believe that the defendant committed an offense permitting forfeiture.").

As to the second prong, Defendant argues that an Indictment cannot, as a matter of law, establish probable cause as to whether property has the requisite nexus to a charged crime permitting forfeiture. (ECF 202, p. 9-10). In support, Defendant points out that grand jury proceedings are non-adversarial and recites a derogatory aphorism about the ease of obtaining an indictment. *Id.* at p. 6. Despite the Defendant's generalized grievance about the rigor with which grand juries scrutinize proposed charges presented to them for their consideration, the Supreme Court has had no concerns about treating a grand jury's probable cause findings about the commission of a crime as conclusive. So Defendant's general denigration of the grand jury

3

process provides no legitimate basis to question the Grand Jury's conclusions here—as to commission of the crime permitting forfeiture or, for that matter, the nexus between the property and that crime. And while it is true that the majority in *Kaley* observed, in a footnote, that a grand jury's finding of nexus in an indictment is not *necessarily* conclusive proof of probable cause on the nexus prong, *id.* at p. 9 (citing *Kaley*, 571 at 1099 n. 9), at least in the context of a motion to release restrained funds to retain counsel, *Kaley* did not conclude that a grand jury *could never* make a probable cause determination as to nexus. And no other court has so held. To the contrary, other courts have held that a district judge *can* properly rely on a grand jury's conclusion that particular assets are forfeitable. *See, e.g.*, *United States v. Simpson*, 09-CR-249-D(06), 2011 WL 195676 (N.D. Tex. Jan. 20, 2011); *United States v. Jones*, 160 F.3d 641, 645 (10th Cir. 1998) ("a grand jury is necessarily called upon in this context to find probable cause to believe the assets named in the indictment are traceable to the underlying offense.").

Moreover, the Grand Jury here went beyond simply issuing a standard asset forfeiture notice of the kind required for criminal forfeiture. See Fed. R. Crim. P. 32.2(a). Rather, the Grand Jury made explicit *probable cause findings* as to the specific types of nexus that forfeitable assets had to the crimes permitting forfeiture. ECF No. 102 at ¶1(o), 44–42. This Court can, and should, properly rely on those specific probable cause findings to conclude that the second probable cause prong – the one regarding nexus – has also been conclusively established by the Indictment. *See e.g.*, *Jones*, 160 F.3d at 645. Of course, the Court has more than just the Grand Jury's findings of probable cause as a basis for finding probable cause as to nexus; the Court also has the sworn affidavit in support of the Criminal Complaint and the seizure warrants. Those affidavits independently provide ample basis for finding probable cause as to nexus in that they explain in detail how Defendant used the assets and properties at issue to

4

facilitate his drug trafficking and money laundering offenses. (Exh. A to ECF 191, at ¶¶ 361-383).[1]

Courts have routinely found reliance on sworn affidavits that supplement a Grand Jury's conclusions to be sufficient to make probable cause findings as to the nexus required for a mandatory restraining order under Section 853(e)(1)(A). *See e.g.*, *United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir. 1989) (noting that court's reliance on affidavits "describing how the accounts were connected to criminal activity" was sufficient to support probable cause determinations and "provided a significant check on the government's power to restrain legitimate, nonindicted assets"); *United States v. Kaley*, 579 F.3d 1246, 1259 (11th Cir. 2009) (noting that the court relied on the grand jury's finding of probable cause supplemented by an agent's affidavit); *see also United States v. Ganos*, 18-CR-62 (PP) (E.D. Wis.), ECF 115 (relying on indictment and affidavit to issue "mandatory" restraining order); *United States v. Patterson*, 13-CR-193 (LA) (E.D. Wis.), ECF 5 (relying on indictment's forfeiture findings and affidavit to issue post-indictment restraining order).

Defendant's response brief does not address the statutory language or the relevant precedent holding that a restraining order is mandatory upon a showing of probable cause. Because that is the law, the Government asks the court to issue the order here.

II.     ***Where the Government has established both prongs of the probable cause inquiry, no evidentiary hearing is required under Section 853(e) or the Due Process Clause.***

The Government acknowledges the Court's stated intention to hold a hearing on the Government's application for a post-indictment restraining order under Section 853(e)(1)(A). (ECF 194, p. 1). To the extent such a hearing is intended to serve as an oral argument to explore the parties' legal positions, the Government, of course, has no objection. The Government,

---

[1] Oddly, Defendant takes issue with the fact that the instant case was charged by criminal complaint even though such pleadings are standard practice. Not only is there nothing nefarious about proceeding by criminal complaint, but doing so in this case provided both Defendant and the Court with a substantial preindictment evidentiary preview of the government's theory of the case and the basis for the Grand Jury's probable cause findings.

5

however, maintains that the kind of evidentiary hearing, or mini trial on the merits, proposed by the Defendant is not warranted where, as here, both prongs of probable cause (liability and nexus) have been established. *See infra*. Instead, the statutory structure and relevant caselaw provide that due process concerns related to the pretrial restraint or seizure of assets for forfeiture are satisfied by a timely trial of the forfeiture issues. In advance of that ultimate determination on forfeitability, however, a restraining order that preserves assets for potential forfeiture is standard practice under the governing law, and a defendant is entitled to a hearing after a *post-indictment* restraining order has been issued only if he makes a bona fide showing that he needs access to the restrained assets to vindicate his Sixth Amendment right to counsel of choice.

**A. *Ex Parte* post-indictment restraining orders are routinely granted based on the statutory language of Section 853(e)(1)(A) and governing caselaw.[2]**

It has long been standard practice, in this district and elsewhere, to seek, and have granted, *post-indictment* restraining orders pursuant to Section 853(e)(1)(A) *ex parte*. *See e.g., United States v. Ganos*, 18-CR-62, ECF 113 (*ex parte* request for post-indictment restraining order); *id.* at ECF 115 (granting same); *United States v. Patterson*, 13-CR-193, ECF 5 (granting United States' *ex parte* motion for a restraining order based on Grand Jury's probable cause findings of both criminal activity and property nexus). That long-standing practice is not district specific. *See also Kaley v. United States*, 571 U.S. 320, 343 (2014) (dissent noting that post-indictment, the "prosecution obtained an *ex parte* order pursuant to 21 U.S.C. § 853(e)"); *United States v. Simpson*, 09-CR-249-D(06), 2011 WL 195676 (N.D. Tex. Jan. 20, 2011) (noting that the government "moved *ex parte* for a restraining order ("RO") regarding an asset identified in the bill of particulars, and the court entered a sealed RO on September 9, 2009)").

---

[2] The Government respects that the Court has issued its ruling on the *ex parte* nature of the Government's application and understands the Court's due-process-related rationales for that order. In addressing the *ex parte* nature of its initial application here, the Government does not intend to relitigate the Court's determination. Rather, the Government provides this section merely to explain why it proceeded as it did and how the statutory structure and case law might inform the proceedings going forward.

The Government is not aware of any precedent holding that an *ex parte*, post-indictment restraining order is unconstitutional. Instead, such orders are routinely sought and granted *ex parte* due to the relevant statutory framework and the case law interpreting its significance. *See e.g.*, *United States v. Park*, 825 F. Supp. 2d 644, 646 (D. Md. 2011) (government may move for restraining order *ex parte*; defendant's right to seek modification is governed by *Farmer*). Section 853(e)(1) governs restraining orders like the one requested here. Two subsections address such orders in different procedural contexts. Subsection (e)(1)(B) addresses restraining orders in the pre-indictment context. In that pre-indictment context, the statute addresses the procedural requirements of notice and an opportunity to be heard. 18 U.S.C. §853(e)(1)(B). It requires both.

The corollary to that provision, which deals with *post-indictment* restraining orders, is found in subsection (e)(1)(A). Notably, that section omits the procedural notice and hearing requirements explicitly provided for in subsection (B). In *Kirschenbaum*, the Seventh Circuit "concluded that this omission was telling." *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998) (quoting *United States v. Moya-Gomez*, 860 F.2d 706, 729 (7th Cir. 1989)). That conclusion may have been based on the general rule of statutory construction that "when Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning (*expression unius est exclusio alterius*)." *Bittner v. United States*, 598 U.S. 85, 95 (2023).

Because of this language in *Kirschenbaum*, the difference in the two statutory provisions, the rule of statutory construction giving meaning to the omission of specific notice procedures, and the number of cases affirming the *ex parte* nature of such requests, the Government proceeded with its initial request *ex parte*. The Government did not proceed in that fashion to engage in nefarious or obfuscatory behavior, but only to comply with its understanding of the

7

statutory framework, legal precedent, and standard DOJ practice, in this district and elsewhere. *See supra.*

**B. Once a post-indictment restraining order is issued, there is no right to an evidentiary hearing to challenge established probable cause absent a *bona fide* showing of a need to access funds for payment of attorneys' fees.**

The Government is unaware of any controlling or even persuasive authority holding that a defendant in a criminal case involving the seizure or restraint of assets is entitled to a post-restraint, pretrial hearing as to forfeitability – except where the defendant moves to release restrained or seized funds to pay counsel of choice and makes a bona fide showing that defendant lacks alternative assets to vindicate his Sixth Amendment right to counsel. *See e.g., United States v. Moya-Gomez*, 860 F.2d 706, 730 (7th Cir. 1988); *United States v. Jones*, 160 F.3d 641 (10th Cir 1998) (holding that defendant is entitled to challenge a pretrial restraining order only upon the making of two threshold showings, including that he has no funds other than restrained property with which to hire counsel); *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475 (5th Cir. 2007) ("a court may issue a restraining order without prior notice or a hearing"); *United States v. Causey*, 309 F. Supp. 2d 917, 926–27 (S.D. Tex. 2004) (neither the statutory procedures in § 853 nor the demands of due process require the court to conduct a post-restraint, pre-conviction hearing before it may continue to restrain assets); *United States v. Rivera (Rivera II)*, No. 24-11161, 2025 WL 3564736, *4 (11th Cir. Dec. 12, 2025) (affirming post-indictment restraining order and rejecting defendant's claim that district court erred in failing to hold evidentiary hearing).

Indeed, even in the civil forfeiture context, the Supreme Court and other courts have routinely held that the Fifth Amendment does not require preliminary or post-seizure forfeiture hearings before forfeiture is determined on the merits at trial. *See e.g., Culley v. Marshall*, 144 S.Ct. 1142 (2024) (Fifth Amendment Due Process Clause requires a timely forfeiture hearing,

but does not also require a separate preliminary hearing in civil forfeiture of personal, rather than real, property, finding the issue was already resolved by the Court's decisions in *United States v. $8,850*, 461 U.S. 555 (1983), and *United States v. Von Neumann*, 474 U.S. 242 (1986)); *see also United States v. $1,756.03 in U.S. Currency*, 772 F. Supp. 3d 842, 878 (E.D. Mich. 2025) (rejecting claimants' argument that a 5-year delay from date of seizure with no trial yet violated their due process rights); *United States v. $1,150,049.51316 Tether*, No. 4:23-cv-00147-MSA, 2025 WL 4657372 (D. Ariz. Nov. 18, 2025), <u>r. & r. adopted</u>, 2026 WL 575691 (D. Ariz. Mar. 2, 2026) (33-month delay between seizure and date that claimant received notice of complaint is not a due process violation); *United States v. Approx. 279,808 Aluminum Structures*, No. 2:18-cv-01023-DMG-SP, 2023 WL 3552114, *4 (C.D. Cal. Mar. 22, 2023) (13-month delay between seizure and filing complaint "is not *per se* unreasonable" and is not a due process violation; "'[m]ore is needed to show prejudice'").

This legal landscape makes clear that Defendant does not have a general right under Section 853(e)(1)(A) or the Fifth Amendment Due Process Clause to a pre-restraint evidentiary hearing on a government application for a post-indictment restraining order. Instead, Defendant's due process rights as to restrained assets are generally vindicated by a timely trial on the merits. And if, after restraint, the defendant can demonstrate a bona fide need to some or all the restrained funds to retain counsel of choice, the defendant can ask the court to revisit probable cause as to nexus. But as to the government's pending application for a post-indictment restraining order, the only question is before the court: has the government demonstrated probable cause.

As noted above, a defendant may seek post-restraint review of probable cause in one context: if "the defendant presents a bona fide need to utilize assets subject to the restraining order to conduct his defense" and "the district court finds that the defendant does not have other

9

assets from which such payments can be made." *Moya-Gomez*, 860 F.2d at 730; s*ee also Jones*, 844 F.3d at 640-41. Only at that point must the district court hold an "immediate, post-restraint, adversary hearing" to "require the government to demonstrate the basis for its assertion, contained in the indictment, that the assets are subject to forfeiture." *Moya-Gomez*, 860 F.2d at 730. To demonstrate a "bona fide need," a defendant must do more than "submit[ ] a bare-bones affidavit asserting that he personally lack[s] sufficient funds to obtain counsel of his choice." *Kirschenbaum*, 156 F.3d at 792.

Here, the Defendant has made some statements, and submitted affidavits, about a potential future need to access restrained assets to pay for counsel. But even on the face of those affidavits, Defendant's request is not yet ripe for several reasons. First, there has been no restraint on assets: *Moya-Gomez* permits only the possibility of a *post-restraint* hearing. Second, Defendant's filings make clear that he currently has sufficient assets to fund his defense. If this Court grants the requested restraint, and at some future date, Defendant requires additional funds to pay his counsel, Defendant will be able to bring a *Moya-Gomez* motion and might be entitled to a hearing then. Such a hearing now, is, however, premature and would conflate the distinct proceedings of the government's pending restraining order application with the separate proceeding of a defense motion to release restrained funds to pay counsel. Moreover, it is worth noting that the Government has repeatedly communicated to Defendant that the Government is willing to work cooperatively to ensure that Defendant has access to assets to the extent such access is necessary to pay for attorneys' fees.[3]

---

[3] Indeed, the Government has previously told defense counsel that the Government would be amenable to an agreement that would allow Defendant to sell certain properties to use the proceeds of such sales to pay for counsel and sent counsel a proposed stipulation to that effect. The Government never heard back.

10

**III.** ***The Indictment and supporting affidavit in this case provide sufficient probable cause to determine that the property sought to be restrained is forfeitable, without further need for an evidentiary hearing.***

Defendant devotes pages of his response brief to challenging whether the Government will ultimately be able to prove his "knowledge and intent," addressing "weaknesses that will need to be explored at trial," generally attacking the Government's theory of the case, disputing whether the Government will ultimately be able to forfeit each of the 43 LLCs after trial, and arguing about whether the LLCs that are the subject of the government's requested restraining order are "proceeds" of the offenses charged. (ECF 202, 10-18). Each of those arguments might be appropriate at a trial on the merits. And each might be relevant to the ultimate question of what assets will be forfeitable if Defendant is convicted. But none of Defendant's arguments dispute whether there is sufficient *probable cause* to believe that the Defendant's business, operating through 43 property-holding LLCs, facilitated the Defendant's drug trafficking, was involved in the Defendant's money laundering offenses, or both.

The law makes clear that property is forfeitable in a money laundering offense if it was "involved in" that offense. 18 U.S.C. 982(a)(1). The drug-forfeiture statute permits forfeiture of property that facilitates a drug offense. 21 U.S.C. §853(a). And federal courts have routinely held that entire businesses are forfeitable if there is probable cause to believe they were involved in or facilitated money laundering or drug-trafficking. Here, the Grand Jury made probable cause findings that Defendant's business, made up of 43 property-holding LLCs, was involved in money laundering and facilitated drug trafficking. An affidavit submitted in support of the criminal complaint provides further support for those probable cause findings. Taken together, the Indictment and Affidavit provide sufficient probable cause for this Court to find that the property sought to be restrained is forfeitable. Such a finding is all that is required to grant the Government's requested restraining order, which is narrowly tailored to preserving forfeitable

assets pending trial on the merits. The Government, therefore, respectfully requests that this Court enter the order without an evidentiary hearing or mini trial on the merits, consistent with the statutory mandates of Section 853(e)(1)(A) and binding legal precedent.

### A. A business entity that facilitates a money laundering offense in a substantial manner is subject to forfeiture in its entirety as property involved in money laundering.

Property "involved in" a money laundering offense includes *not only the actual criminal proceeds* laundered but also any property used to facilitate the laundering offense. *United States v. Cessa*, 872 F.3d 267, 273-74 (5th Cir. 2017). Property facilitates a money laundering offense when it makes money laundering easier to commit or harder to detect. *Id.* at 274. The drug-forfeiture statute likewise permits the forfeiture of property that facilitates a drug offense by making it easier to commit or harder to detect. 21 U.S.C. § 853(a).

The Seventh Circuit and other courts have held that a business entity that facilitates a money laundering offense in a substantial manner is subject to forfeiture, in its entirety, as property involved in money laundering. *See, e.g. United States v. Baker*, 227 F.3d 955, 969-70 & n.3 (7th Cir. 2000) (defendant's business premises were "clearly forfeitable" as involved in money laundering because "not only did [money laundering] transactions occur on the premises; the conspiracy was obviously run from this compound. As the key to [defendant's] operation, it was obviously 'involved in' the conspiracy"); *see also United States v. Overstreet*, 2012 WL 5969643 at 13-14, 18-20 (D. Idaho Nov. 29, 2012) (where defendant converted the cash receipts of an illegal gambling business into deposits into his night club's business account by cashing third-party checks and installing an ATM machine at the club, the entire business was forfeitable as property involved in money laundering); *United States v. Schlesinger*, 396 F. Supp. 2d 267, 272-73 (E.D.N.Y. 2005) (holding that clothing manufacturing business was involved in money laundering offense because the defendant deposited fraud proceeds into business's operating

accounts), *aff'd*, 261 Fed. Appx. 355 (2d Cir. 2008); *United States v. Swank Corp.*, 797 F. Supp. 497, 502 (E.D. Va. 1992) (declining motion to modify restraining order as to corporation's asset on ground that that corporation in its entirety was subject to forfeiture as involved in money laundering because corporation's bank accounts had been used to conduct transactions involving proceeds of mail fraud scheme); *see also In re Restraint of Bowman Gaskins Fin. Group Accounts*, 345 F. Supp. 2d 613, 624 (E.D. Va. 2004) (noting that entire business was forfeitable as property involved in a money laundering offense because business facilitated money laundering activity by conducting transactions involving fraud proceeds through business accounts).

Where a business is subject to forfeiture in its entirety as property involved in money laundering, then the proceeds that the business earns is also subject to forfeiture as income traceable to the business. That is so because section 981(a)(1)(A) requires forfeiture of "any property, real or personal, involved in such [money laundering] offense, or any property *traceable to* such property." 18 U.S.C. § 982(a)(1) (emphasis added); *see also Schlesinger*, 396 F. Supp. 2d at 272 (holding that if defendant's real property was forfeitable as property involved in the money laundering offense, then the proceeds of the sale of such property is forfeitable).

**B. The Grand Jury's probable cause findings in this case establish the requisite nexus.**

As explained above, the Grand Jury in this case was asked to make probable cause findings as to both prongs of the relevant inquiry – whether there was probable cause to believe that Defendant conspired to commit money laundering and drug-trafficking offenses (liability), *and* whether there was probable cause to believe that Defendant used his business to facilitate those offenses (nexus). The first finding of probable cause is standard in every indictment. The second is less common, but critical here because the Grand Jury's findings of probable cause as to nexus were explicit and specific.

13

In this case, on May 5, 2026, the Grand Jury charged Defendant and others by Indictment, which alleged, among other things, violations of 21 U.S.C. §§ 841(a)(1) and 846 (drug trafficking conspiracy), 21 U.S.C. § 1956(a) (maintaining drug trafficking premises), and 18 U.S.C. § 1956 (money laundering conspiracy and substantive concealment money laundering). ECF 102.

In Count Thirty-three of the Indictment, the grand jury charged that between May 2024 and April 2026, Defendant knowingly conspired with others to conduct and attempt to conduct financial transactions, which transactions were designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, knowing those proceeds were obtained through some form of unlawful activity. R. 102, Count Thirty-Three. Two specific instances of concealment money laundering were further charged in Counts Thirty-Four and Thirty-Five. More specifically, Defendant was charged with concealing the nature, source, ownership, and location of proceeds that he deposited into his business account in July 2025 and September 2025. ECF 102, Counts Thirty-Four and Thirty-Five.

The essence of the money laundering conspiracy was to operate a property management company through control of various LLCs, which properties were used by various individuals to facilitate drug trafficking, and the subsequent rental payments from said properties were deposited into business accounts so that the payments from drug traffickers were commingled with legitimate sources to conceal the true nature, source, ownership, and location of those monies. ECF 102, ¶1, Counts Thirty-Three—Thirty-Five.

To this end, the Grand Jury made various *probable cause findings* establishing a nexus between Defendant's crimes and the LLCs that are the subject of the application for restraining order. Specifically, the Grand Jury's findings as to nexus include, among other things, the following:

- Samuel P. Stair operated S2 Real Estate through forty-three limited liability companies, as referenced in the Forfeiture Findings of this Indictment. ECF 102, ¶1(a).

- Each of the LLCs existed primarily, if not entirely, to hold real property assets. *Id.* ¶1(b).

- The primary purpose of Stair's business was to hold and rent real property as a landlord and property manager. *Id.* ¶1(f).

- In running the LLCs above, Stair utilized Bank Accounts at Bank 1, including:

    ▪ account ending in x2329, held under S2 Real Estate Group 2 LLC; and
    ▪ account ending in x8215, held under S2 Real Estate Group 2 LLC. *Id.* ¶1(g).

- In running the LLCs above, Stair utilized Bank Accounts at Bank 2, including:

    ▪ account ending in x8151, operating under Sam P. Stair; and
    ▪ account ending in x0260, operating under Sam P. Stair. *Id.* ¶1(b).

- Stair's books and records were primarily kept on a property management program called AppFolio, which was used to track and collect, among other things, rent payments and security deposits. *Id.* ¶1(i).

- Stair routinely transferred funds from AppFolio into the accounts held at Banks 1 and 2. *Id.* ¶1(k).

- Stair transferred funds between the accounts in Banks 1 and 2.

- Stair deposited and transferred proceeds from the controlled-substance offenses described below into the Accounts at Bank 1 and Bank 2. These proceeds, which included payments made by individuals like McDade for the purpose of renting properties to engage in drug trafficking, were comingled with payments received from legitimate sources. *Id.* ¶1(l).

15

- Stair utilized the air of legitimacy created by S2 Real Estate and its related LLCs to conceal the nature of his criminal conduct and the source, ownership, and control of the proceeds of his and others unlawful activity by, among other things, disguising drug trafficking proceeds as income derived from the business's legitimate income. *Id.* ¶1(n).

- Stair utilized his real estate business, and its related LLCs to facilitate the drug trafficking and money laundering offenses charged herein. *Id.* ¶1(o).

Finally, the Grand Jury also made specific *probable cause findings* regarding forfeitability of Defendant's LLCs vis a vis his commission of the drug and money laundering offenses:

**THE GRAND JURY FURTHER FINDS** *probable cause* to believe that**:**

1. Upon conviction of the controlled substance offenses alleged in Counts One through Three, Counts Five through Eight, Counts Ten through Thirteen, Count Sixteen, Counts Eighteen and Nineteen, Counts Twenty-One through Twenty-Four, Court Twenty-Eight through Thirty, and Count Thirty-Two, the defendants shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, all right, title, and interest in the following property, all of which were used, and intended to be used, in whole and in part, to commit, and to facilitate the commission of, that violation:

   a. All right, title, and interest in the LLCs listed below, including any membership or ownership interest therein, together with any and all rights to the assets, property, income, or proceeds of the LLC.

      i. S2 Real Estate Group I LLC;

      ii. S2 Real Estate Group 2, LLC;

      iii. S2 Real Estate Group 3 LLC;

16

iv. S2 Real Estate Group 4 LLC;

v. S2 Real Estate Group 5, LLC;

vi. S2 Real Estate Group 6, LLC;

vii. S2 Real Estate Group 7, LLC;

viii. S2 Real Estate Group 8, LLC;

ix. S2 Real Estate Group 9 LLC;

x. 9330 W Lincoln S2 LLC;

xi. S2 Real Estate 10101 W Capitol LLC;

xii. S2 Real Estate 1700 Lincoln LLC;

xiii. S2 Real Estate 1957 S Congo, LLC;

xiv. S2 Real Estate 2033 S 17th LLC;

xv. S2 Real Estate 2126 S 17th, LLC;

xvi. S2 Real Estate 2319 2327 Michigan, LLC;

xvii. S2 Real Estate 2509 W Becher LLC;

xviii. S2 Real Estate 2612-20 W Greenfield LLC;

xix. S2 Real Estate 2903-5 W Pierce, LLC;

xx. S2 Real Estate 4631 Sonseeahray, LLC;

xxi. S2 Real Estate 5916 W Burnham LLC;

xxii. S2 Real Estate 605 N 30th, LLC;

xxiii. S2 Real Estate 729 21st, LLC;

xxiv. S2 Real Estate 7505 W Bradley LLC;

xxv. S2 Real Estate 7601 W Becher LLC;

xxvi. S2 Real Estate Group 2323 S 5th, LLC;

xxvii. S2 Real Estate 2333 2345 S 9th Place, LLC;

17

xxviii.    S2 Real Estate Group 829 S 19th, LLC;

xxix.    S2M2 Real Estate 2804 W Kilbourn, LLC;

xxx.    HMS2 Real Estate LLC;

xxxi.    S2 1613 Bolivar, LLC;

xxxii.    S2 Real Estate 9730 LLC,

xxxiii.    S2 Real Estate 1206-8 S 5th Pl LLC,

xxxiv.    S2 Real Estate 1517 S 23RD LLC;

xxxv.    S2 Real Estate 1630 S 32ED, LLC;

xxxvi.    S2 Real Estate 1815 1733 LLC;

xxxvii.    S2 Real Estate 2224 LLC;

xxxviii.    S2 Real Estate 2925 Lincoln, LLC;

xxxix.    S2 Real Estate 6900 W Lincoln LLC;

xl.    S2 Real Estate Group 1836, LLC;

xli.    S2 Real Estate Group 251927 LLC;

xlii.    S2 Real Estate, LLC; and

xliii.    S2 Real Estate Group Partners LLC

2.     Upon conviction of any of the money laundering offenses in violation of Title 18, United States Code, Section 1956(h) and 1956(a), as set forth in Counts Thirty-Three through Thirty-Five, defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all right, title, and interest in the following property, all of which were involved in and were used, and intended to be used, in whole and in part, to commit, and to facilitate the commission of, that violation:

i.    S2 Real Estate Group I LLC;

ii.    S2 Real Estate Group 2, LLC;

18

 iii. S2 Real Estate Group 3 LLC;

 iv. S2 Real Estate Group 4 LLC;

 v. S2 Real Estate Group 5, LLC;

 vi. S2 Real Estate Group 6, LLC;

 vii. S2 Real Estate Group 7, LLC;

 viii. S2 Real Estate Group 8, LLC;

 ix. S2 Real Estate Group 9 LLC;

 x. 9330 W Lincoln S2 LLC;

 xi. S2 Real Estate 10101 W Capitol LLC;

 xii. S2 Real Estate 1700 Lincoln LLC;

 xiii. S2 Real Estate 1957 S Congo, LLC;

 xiv. S2 Real Estate 2033 S 17th LLC;

 xv. S2 Real Estate 2126 S 17th, LLC;

 xvi. S2 Real Estate 2319 2327 Michigan, LLC;

 xvii. S2 Real Estate 2509 W Becher LLC;

 xviii. S2 Real Estate 2612-20 W Greenfield LLC;

 xix. S2 Real Estate 2903-5 W Pierce, LLC;

 xx. S2 Real Estate 4631 Sonseeahray, LLC;

 xxi. S2 Real Estate 5916 W Burnham LLC;

 xxii. S2 Real Estate 605 N 30th, LLC;

 xxiii. S2 Real Estate 729 21st, LLC;

 xxiv. S2 Real Estate 7505 W Bradley LLC;

 xxv. S2 Real Estate 7601 W Becher LLC;

 xxvi. S2 Real Estate Group 2323 S 5th, LLC;

<ol type="i" start="27">
<li value="27">S2 Real Estate 2333 2345 S 9th Place, LLC;</li>
<li>S2 Real Estate Group 829 S 19th, LLC;</li>
<li>S2M2 Real Estate 2804 W Kilbourn, LLC;</li>
<li>HMS2 Real Estate LLC;</li>
<li>S2 1613 Bolivar, LLC;</li>
<li>S2 Real Estate 9730 LLC,</li>
<li>S2 Real Estate 1206-8 S 5th Pl LLC,</li>
<li>S2 Real Estate 1517 S 23RD LLC;</li>
<li>S2 Real Estate 1630 S 32ED, LLC;</li>
<li>S2 Real Estate 1815 1733 LLC;</li>
<li>S2 Real Estate 2224 LLC;</li>
<li>S2 Real Estate 2925 Lincoln, LLC;</li>
<li>S2 Real Estate 6900 W Lincoln LLC;</li>
<li>S2 Real Estate Group 1836, LLC;</li>
<li>S2 Real Estate Group 251927 LLC;</li>
<li>S2 Real Estate, LLC; and</li>
<li>S2 Real Estate Group Partners LLC</li>
</ol>

*Id.* at 40-44.

Thus, the Indictment, in itself, reflects the Grand Jury's probable-cause conclusions that (a) Defendant conspired with others to engage in drug and money laundering offenses; (b) Defendant received funds, including drug proceeds, as part of that money laundering conspiracy; and (c) Defendant used S2 Real Estate through forty-three limited liability companies, as referenced in the Forfeiture Findings of this Indictment, in committing the three counts of concealment money laundering offenses.

20

Accordingly, the Grand Jury went beyond providing a standard forfeiture *notice*. It made specific and explicit findings of *probable cause* related directly to the nexus and forfeitability of Defendant's business, which are the very assets at issue in the instant application for a restraining order. As detailed above, this Court can and should rely on those probable cause findings in concluding that the Government is entitled to a mandatory restraining order under Section 853(e)(1)(A). *See e.g.*, *United States v. Park*, 825 F. Supp. 2d at 646 (noting that the standard for issuing a restraining order is probable cause, that the court may rely on the grand jury's findings as to probable cause, and that once the required probable cause showing is made, the "entry of a pre-trial restraining order is mandatory.").

### C. The Affidavit and Magistrate Judge's probable cause findings provide further support for the Nexus determination here.

Though the precedent outlined above provides that this Court can rely solely on the Grand Jury's probable cause findings as to nexus and forfeitability, this case presents additional probable cause through the Affidavit in support of the Criminal Complaint and the Magistrate Judge's findings of probable cause supporting the pre-indictment seizure of Defendant's financial accounts.

In this case, financial records reviewed during this investigation show that Defendant caused approximately $1.6 million in drug proceeds to be deposited into his corporate accounts (Tri City 2329 account and Charles Schwab 0260 account), and these proceeds were transferred between the corporate accounts, and another account at Charles Schwab ending in 8151. R. 103 ¶¶ 370-383. These funds are the same funds referenced in the money laundering conspiracy charge set forth in Count Thirty-Three. The accounts ending in 2329 and 0260 are the same ones involved in each of the substantive money laundering transactions charged in Counts Thirty-Four and Thirty-Five. Financial records further revealed that Defendant transferred drug proceeds from the above-referenced accounts to another Tri City account ending in 8215.

21

Another branch of this Court already found probable cause to believe that funds remaining in these accounts as of April 21, 2026, and May 20, 2026, were subject to forfeiture as monies traceable to drug trafficking and as having been involved in concealment money laundering. *Id.* ¶ 383; Seizure Warrant # 26-MJ-91, ¶ 139.

Specifically, on April 21, 2026, United States Magistrate Judge Nancy Joseph issued seizure warrants #26-902M, #26-903M, and #26-904M permitting seizure of funds from the Tri City and Charles Schwab accounts ending in 2329, 0260, and 8151. Additionally, on May 20, 2026, United States Magistrate Judge William E. Duffin issued a seizure warrant for funds in another Tri City account ending in 8215. *See* seizure warrant #26-MJ-91.

Magistrate Judge Joseph and Magistrate Judge Duffin issued those warrants on seizure warrant applications, supported by an affidavit of Special Agent Jeremy Dorn, that sought seizure of funds from those accounts on dual grounds that (a) the seized funds were traceable to proceeds of the drug and money laundering conspiracies, and (b) the funds were involved in money laundering. Funds from accounts ending in 8215 and 8151 were subsequently seized on the same bases.

Those probable cause determinations matter here. First, those determinations were based on the fact that the proceeds of Defendant's entire business – S2 real estate – were deposited into those accounts. Second, the Magistrate Judges correctly concluded that by depositing *all* proceeds from *each* of the relevant LLCs into those accounts, there was probable cause to believe Defendant had commingled legitimate funds with proceeds of unlawful activity for the purpose of concealment in violation of statutes prohibiting money laundering. In other words by authorizing the seizure of all the funds in Defendant's business accounts, the Magistrate Judges necessarily concluded that the Defendant had used the entirety of his business, and his corporate accounts, to facilitate his drug trafficking and money laundering.

22

Subsequently, the Grand Jury reaffirmed the Judges' probable cause determinations when it found that Defendant's bank accounts, and the whole of Defendant's business, facilitated Defendant's drug trafficking and money laundering offenses. That makes the Defendant's business, and the profits therefrom, forfeitable. *See supra* III.A. And, as the precedent outlined above demonstrates, this Court can, and should, rely on those probable cause determinations here.

### IV. *Defendant's response does not provide a legal or factual basis to deny the Government's requested restraining order nor to justify an evidentiary hearing.*

As explained above, the Indictment and Affidavit clearly allege that Defendant routinely commingled the illicit proceeds of his drug-trafficking activity with the legitimate proceeds of his rental business via transactions designed to conceal the nature, source, ownership, location, or control of the drug proceeds. That kind of commingling for a concealment purpose is the definition of concealment money laundering, and it is the basis for the money laundering charges in the Indictment. In short, the Indictment and Affidavit repeatedly allege the kinds of facts that courts have routinely held to satisfy the "involved in" money laundering and drug-crime "facilitation" theories of forfeiture. Defendant does not explain why these cases are inapposite or inapplicable. Those cases end the inquiry here.

Rather than engaging in these arguments or cases, Defendant focuses on the purported "overbreadth" of the government's forfeiture theory or its alleged failure to tie every LLC to the charged conduct. Such arguments are unavailing because the Indictment and the Affidavit include sufficient probable cause to conclude that the Defendant used the entirety of his business to facilitate his money laundering and drug offenses. Because Defendant's arguments are wholly unsupported by legal citations and are focused primarily on the merits as they will be proven at trial, it is difficult to address them in the current context that requires only a finding of probable cause. Nonetheless, a few of Defendant's arguments are worth specifically dispelling here.

23

For example, Defendant argues that it is inappropriate to find Defendant's entire business forfeitable because he "spent decades building [a] legitimate" business to "create wealth" rather than for the purpose of facilitating the unlawful activities in the indictment. (ECF 202, pp. 6, 14-15). But the length of time that the Defendant operated his business legitimately, the fact that some of it continued to be legitimate during the time of the unlawful conduct, and even the fact that his *primary* business purpose was to create wealth rather than break the law is all beside the point. It does not, contrary to Defendant's assertion, make an "involved in" or "facilitation" theory of forfeiture "vulnerable." *Id.* Nor is it legally accurate to say that there is a requirement of "transaction-level tracing" to justify forfeiture. (ECF 202, p. 15).

Indeed, when a Defendant commingles clean money with dirty money for a concealment purpose, *all* the money or the entire business is forfeitable precisely *because* such commingling makes transaction-level tracing difficult. *See Baker*, 227 F.3d at 966 ("To determine the value of funds, the government need not trace each dollar of income by the means of payment, and it need not trace each dollar to a specific instance of laundering.") (citing *United States v. Jackson*, 935 F.2d 832, 840 (7th Cir. 1991) ("We do not read Congress's use of the word "involve" as imposing the requirement that the government trace the origin of all funds deposited into a bank account to determine exactly which funds were used for what transaction.")).

Moreover, none of the holdings cited above rested on the length of business operations or whether the primary purpose of the business was legitimate or illicit activity. Rather, each of the cases involved forfeiture of legitimate businesses. For example, *Overstreet* involved a nightclub. *Schlesinger*, a restaurant. One can presume that the owners of these businesses started them to create wealth legitimately and that the businesses engaged in legitimate business operations. But, at some point, the defendants in those cases *used* their legitimate businesses to facilitate unlawful activity. Once they did so, the legitimate business became subject to forfeiture. In other words,

24

those businesses became "the property of the government the moment they were derived from, *or utilized in*, the criminal activities condemned." *United States v. Bissell*, 866 F.2d at 1350. Thus, it does not matter whether Defendant's "lifetime spent constructing a substantial real estate portfolio was merely an elaborate means of serving [] an unremarkable criminal enterprise." (ECF 202, p. 6). What matters is whether Defendant *utilized* his real estate portfolio to facilitate his criminal conduct. The Grand Jury concluded that he did. The Affidavit, and the Magistrate Judges' findings, support that probable cause finding. That is sufficient to find the business forfeitable. That is particularly true at this stage in the proceedings when all that is required is a probable cause finding that the Supreme Court has held is "not a high bar," and which requires "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley*, 571 U.S. at 338. And once there is probable cause to find the business forfeitable, a pre-trial restraining order is mandatory under Section 853(e)(1)(A). *See supra.*

Defendant also argues, in various ways, that the Government will not be able to prove Defendant's knowledge or intent or that it will have "an uphill battle to prove Stair liable" for the drug trafficking engaged in by his co-conspirators. (ECF 202, p. 13-14). Having pleaded not guilty, Defendant is entitled to take issue with the Government's ultimate ability to prove the case against him. And he will have the opportunity to raise all these *mens-rea* based defenses at trial. But the time to put the Government to its proof is at trial. At this stage in the proceeding, Defendant himself acknowledges he cannot challenge the Grand Jury's probable cause findings that he possessed the requisite *mens rea* to commit the crime. (ECF 202, p. 8) ("The grand jury's probable cause determination is legally significant – it satisfies the probable cause element required to obtain the restraining order and insulates that finding from challenge at any subsequent hearing."). That concession makes Defendant's ultimate-issue arguments unavailing here.

Finally, Defendant takes issue that the Indictment identifies only two alleged money laundering transactions that total just over $71,000 while seeking the forfeiture of Defendant's entire business. (ECF 202, pp. 6-7). That argument, of course, wholly ignores that the Indictment charged Defendant with a long-running conspiracy to engage in money laundering. ECF 102, p 38. And it ignores that pleading two specific transactions of that conspiracy is merely an effort to charge *examples*, or specific acts, related to that conspiracy. The evidence in the Indictment, and the evidence outlined in the Affidavit, support a probable cause finding that a substantial part of Defendant's business was related to illicit conduct, and that the entirety of the business facilitated that illicit activity. ECF 102, pp 1-2 & 38-39; Exh. A to ECF 191, at ¶¶ 361-383). That makes the business forfeitable, and a restraining order to preserve the assets of that business mandatory under Section 853(e)(1)(A).

Nothing in Defendant's brief addresses the legal precedent supporting the restraining order, provides a basis to conclude that the Grand Jury erred in determining that his business, made up of 43 LLCs, facilitated drug trafficking and was involved in money laundering, nor explains what purpose an evidentiary hearing would have given the probable cause findings that have already been made. This Court should, therefore, grant the Government's requested restraining order without holding an evidentiary hearing.

One final point worth noting is that courts routinely permit the seizure of evidence and assets on an *ex parte* showing of probable cause despite the existence of constitutional considerations. The authorization of search warrants and seizure warrants is commonplace, even though search warrants involve a search of places to which a claimant or defendant enjoys a Fourth Amendment right to be free from unreasonable searches. Moreover, such warrants are typically issued *before* a grand jury has returned charges on findings of probable cause. Here, in contrast, the United States sought restraint *ex parte* only after the Grand Jury returned charges

26

Case 2:26-cr-00094-BHL-SCD     Filed 07/13/26     Page 26 of 29     Document 206

supporting forfeiture, additionally found nexus as to the property items the United States seeks to restrain, and only after the Government further supplemented the Grand Jury's probable cause finding as to nexus with facts in a supporting affidavit. The dual probable cause finding as to liability and nexus here, therefore, provides ample basis for the issuance of the restraining order to simply preserve forfeitable assets.

**V.     The requested restraining order is narrowly tailored to preserve forfeitable assets.**

It is also worth noting that the Government's proposed restraining order is narrowly tailored to preserve assets subject to forfeiture, while allowing the Defendant's business to continue operating through a third party of his choosing. Moreover, because the requested order seeks only to restrain *net proceeds*, the order does not restrict the business's ability to satisfy all legitimate financial obligations. In other words, all the Government seeks is to ensure that the *net proceeds* of a business that the Government has shown it has probable cause to believe is entirely forfeitable are not improperly dissipated pre-trial. Nothing in the Government's requested order would permanently deprive Defendant of those assets until Defendant is adjudicated guilty on the merits at trial and a final forfeiture determination is made.

Additionally, although the Government is not aware of any statutory or legal precedent requiring a showing of why the current bond conditions are insufficient to preserve forfeitable assets, the reality is that, in this case, those conditions *are* insufficient.

As an initial matter, the financial conditions set in this case are no more stringent than financial conditions that apply to nearly all financial-crime cases prosecuted in this district. In fact, in this case, they are less stringent because as far as the Defendant's third-party agent, Smart Assets is concerned because Smart Assets need only *notify* pretrial services of expenditures in excess of $10,000. It does not need to seek permission to make those expenditures. In other words, Defendant can merely notify PTS that he has spent more than

27

$10,000 to pay for what he, through his agent, has deemed "legitimate" business expenses. It is notable that in the latest such "notice" that the Government was provided from PTS, it appears that Defendant characterized as "business expenses" charges that certainly appear personal in nature. For example, included in the purported business credit card expenses were expenditures that appeared to have been made at: PetSmart, Spirit Airlines, Inmate Phone, Inmate Payment, Supercuts, grocery stores, and Dunkin Donuts.[4]

As this latest notice demonstrates, the $10,000 limit on a singular financial transaction imposed as conditions of pre-trial release does not prevent dissipation of funds in significant and meaningful ways. For example, it prohibits large financial transactions, but not "smaller," still lavish, financial transactions that have the cumulative effect of diminishing the value of assets that the Grand Jury has concluded are forfeitable. Nor does it protect against any type of "structuring" to obfuscate court-ordered conditions. Moreover, the condition relies exclusively on Defendant's self-interested reporting.[5]

Again, nothing in the statute or precedent require the Government to show that its requested restraining order is the least restrictive way to preserve assets or that bond conditions are insufficient, but in this case, that standard is met. The Government's requested order is narrowly tailored. It seeks only to formalize the status quo and preserve forfeitable *net proceeds*, balancing both Defendant's interest in continued operation of his business with the need to preserve assets (*net proceeds*) subject to forfeiture.

---

[4] The provided documentation was a PDF of an excel spreadsheet with only partial columns provided so even the full name of the business at which charges were made is obscured. The government assumes that the "inmate" related charges were incurred while Defendant was incarcerated. Such charges certainly cannot legitimately be deemed "business expenditures."

[5] Defendant, and the accompanying affidavit from Smart Assets, seem to take issue with the Government's "failure" to directly contact Smart Asset to obtain information. But it is unclear what basis the Government could have to reach out to a represented party's agent, or what basis the Government would have to make requests or demands of that agent without the kind of Court order requested here. Indeed, the Government has been careful to send all communications aimed at Smart Asset through Defendant's counsel. For example, when it has received complaints from tenants related to Smart Asset failing to address issues, it has forwarded those to Defendant's counsel to ensure that it is not communicating with a represented party's agent.

## VI. Conclusion

Section 853(e)(1)(A) mandates the issuance of a post-indictment restraining order upon the Government's request and a showing of probable cause to believe that Defendant has committed a crime and the assets sought to be restrained are forfeitable. Relevant statutory authority and legal precedent provides that the Court can and should rely on the Grand Jury's determinations of probable cause. Existing legal authority further supports the issuance of an 853(e)(1)(A) pretrial restraining order without an evidentiary hearing once probable cause has been established. Defendant's response brief does not challenge the statutory framework or relevant legal authority. Nor does it explain why the Grand Jury's probable cause findings, or those of the Magistrate Judges, are incorrect. Here, the Government has requested a restraining order pursuant to Section 853(e)(1)(A) and made the required dual-pronged probable cause showing through the Indictment and an Affidavit. As such, the Government respectfully requests that the Court enter the requested restraining order pursuant to Section 853(e)(1)(A).

Dated at Milwaukee, Wisconsin, this 13th day of July, 2026.

Respectfully submitted,
/s/ *Julie F. Stewart*

KATHERINE M. HALOPKA-IVERY
JULIE F. STEWART
ELIZABETH MONFILS
Assistant United States Attorneys